FINER, Appellant, v. NICHOLS, Respondent.

St. Louis Court of Appeals, February 5, 1907.

1. EVIDENCE: Record of Births. The charter of the city of St. Louis and the ordinances of that city provide for the registration of marriages, births, etc., occurring in the city, and the record of a birth officially registered under those provisions is competent evidence where the date of such birth is material in a case.

2. ———: ———: Materiality of Evidence. In an action for damages on account of personal injuries to plaintiff which caused a miscarriage, where the date of the birth of a child born some months afterwards, together with other facts, tended to show that the injury complained of did not produce the miscarriage complained of, the registration of such subsequent birth as shown by the record of the city of St. Louis was competent.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED AND REMANDED.

*Montague Punch* for appellant.

*Stern & Haberman* for respondent.

GOODE, J.—The appeal in this case is taken by plaintiff from an order of the court below granting de-

fendant a new trial. In the order sustaining the motion for a new trial, no reasons are given for sustaining it, and we will be compelled to determine whether any of the grounds assigned by defendant in her motion for a new trial justified the court's action.

The case is one brought to recover damages for personal injuries alleged to have been suffered by defendant June 18, 1902, by giving away of the floor of a privy, causing plaintiff to fall into a vault, and bruising her over the bowels, seriously shocking and injuring her nervous system, and causing her to be prematurely delivered of a child of which she was pregnant at the time of the accident. The privy was on premises occupied by plaintiff and her husband as tenants of defendant. It is alleged the premises were leased to plaintiff and her husband, as tenants, in November, 1901, for a term to continue to a date in August, 1902, or subsequent to the date of the accident.

In answer, a general denial was pleaded and also contributory negligence, on the score that plaintiff knew the condition of the floor of the privy when she entered it. Evidence adduced for the plaintiff goes to show she stepped into the privy on the day of the accident, and before she reached the seat, some boards or planks in the floor gave way under her, precipitating her into a vault four feet deep, filled with ordure; that plaintiff struck her side against the edge of the hole in the floor through which she fell, greatly bruising her over the abdomen as alleged; that a few hours after the fall and in consequence of it, she had a miscarriage, attended with much suffering; and that on April 5, 1903, she had another miscarriage. The latter circumstance was shown as going to prove plaintiff was disabled by the accident to carry a child through the normal period of gestation. Evidence was also adduced to show that defendant, both in the verbal agreement leasing the premises and afterwards, promised to put everything in good repair; that

the floor of the privy was thought to be insecure and defendant promised repeatedly to repair it; that a negro man was sent by defendant to fix it, but whatever repairs he made were of a careless character and did not correct the unsafe condition of the floor; that defendant notified plaintiff all repairs needed to render the floor safe had been made, and in reliance upon this statement, plaintiff entered the privy at the time of the accident. A great deal of testimony was given in contradiction of the plaintiff's evidence, and tending to show that if she fell through the floor of the closet at all, she received no injury. Witnesses swore she was attending to her usual tasks on June 18, and on that very day stated that she had fallen into the privy on an earlier day, but did not say she suffered any injury from the accident, nor did she bear the appearance of having suffered any. Defendant's evidence goes to show no miscarriage resulted from the alleged fall or could have done so, and that if plaintiff had a miscarriage it was entirely disconnected from any fall she received, both as to time and consequence. The defendant testified positively that she made no agreement to repair the closet, or do any other repairing on the premises; and it may be said that on all the issues of fact, there was so direct a conflict between the testimony of plaintiff and that for defendant, as to make it impossible to reconcile both versions with honesty of statement. Defendant's evidence is that the vault to the privy was very narrow and did not extend in front of the seat; whereas plaintiff and her witnesses swore the vault was under the floor in front of the door of the closet, and plaintiff said she broke through a plank into the filth of the vault as soon as she stepped inside the door.

The first trial of the cause resulted in a verdict for the plaintiff in the sum of $250, which verdict the court set aside as being contrary to the weight of the evidence and because plaintiff and some of her witnesses

had committed perjury. On the second trial the verdict was for $2,500. As said already, this verdict was likewise set aside for various reasons given by the court in a memorandum opinion, but not embodied in the order.

During the second trial defendant offered in evidence an official record of the Health Department of the city of St. Louis, showing the births in said city and containing an entry under the date of April 19, 1903, of the birth of a child to plaintiff, and that Dr. McWilliams, a physician, attended her in the confinement. Plaintiff and a midwife had testified that plaintiff had a miscarriage on April 5, 1903. The midwife swore the child when born was but seven months old, while the record of births offered by defendant showed the child was not born on April 5th but two weeks later. The record was excluded and this ruling was one of the grounds for which the court below granted a new trial; as on further reflection the court became convinced the evidence was competent, and that error prejudicial to defendant was committed in excluding it. We agree with the conclusion of the learned trial judge. The record was competent evidence by express statutory enactment and by force of the common-law rule that official registers, kept by persons in public office, wherein the law requires the happening of certain events to be recorded, are admissible as evidence when the occurrences of which they speak are drawn into question. [1 Greenleaf on Evidence (last Ed.), sec. 483.]

The charter of the city of St. Louis in article 3, section 26, paragraph 5, gives the mayor and assembly of the city power to provide for and enforce the registration of marriages, births and deaths occurring in the city. By section 473, article 2 of the General Municipal Ordinances of St. Louis, this duty is imposed on the health commissioner. By section 717, article 13 of the ordinances, that official is required to keep a record of the births and deaths. The same power is conferred

upon the health commissioner in article 12, section 4 of the city charter, and the office of health commissioner is provided for by the charter. In article 12, section 9 of the charter it is prescribed that the health commissioner shall file all petitions, documents and papers belonging to his office and keep a record of his acts and orders; further, that copies of such documents and records shall be presumptive evidence of the facts contained in them in any court of justice. Those statutory and ordinance provisions rendered the record of the date of the birth of plaintiff's child competent evidence, no objection having been raised to the mode in which the record was authenticated. This point was settled, in effect, by previous adjudications. [Ohmeyer v. Supreme Forest Woodmen Circle, 91 Mo. App. 189; Reynolds v. Prudential Ins. Co., 88 Mo. App. 679.]

The competency of the register as evidence is not so much contested as is the materiality of the fact that it was offered to prove, to-wit; the birth of a child to plaintiff on April 19, 1903, instead of on April 5th, to which she and the midwife swore. Her counsel says the evidence shows the birth was premature and it is of no consequence that it occurred two weeks later than plaintiff testified. This argument takes for granted that the jury was bound to find the child was born prematurely, as plaintiff and the midwife swore; but the jury was free to find the contrary. The purpose of showing that plaintiff was delivered of a child in April, 1903, and before the usual period of gestation had expired, was to increase the award of damages by inducing the jury to believe plaintiff had been so injured by the accident in controversy, as to incapacitate her to carry a child the full time. The amount of damages awarded on the second trial was ten times as great as the first award; and in view of so enormous a disparity in the findings of the two juries as to the extent of plaintiff's injuries, defendant may insist, with reason, that any evidence was

material which tended to prove her injuries were less than she swore, and therefore that evidence to prove she was not disabled to bear a child normally, was competent, as it would influence the jury in assessing damages. Whether plaintiff's child was born on the 5th or 19th of April might not be so important if it was conceded to have been born prematurely, but this was a contested issue. Defendant's counsel endeavored to show the birth occurred at the normal time. Plaintiff swore she fell into the closet vault on June 18, 1902, suffered a miscarriage on that day and was not able to have, and did not have, intercourse with her husband until two months or ten weeks later. If these statements were all accepted as true, a child begotten after the accident could not have been born after nine months gestation in April, 1903, but the statements were disputed, and particularly plaintiff's asserted disability to have sexual intercourse until two months or more after June 18, 1902. If she was not under such disability later than the 18th of July, she might then have conceived a child which could have been born in the usual course of nature on April 19, 1903. The birth record, whatever its weight, was competent and bore on a material issue.

If the other rulings assigned as grounds for granting a new trial were erroneous, they may not occur again, and we are too much pressed by work to examine assignments when not compelled to do so in order to decide a cause.

The order for a new trial is affirmed and the cause remanded. All concur.