# PRIDDY et al., Appellants, v. BOICE.

**Division One, February 22, 1907.**

1. **CHANGE OF VENUE: Jurisdiction After Order.** After the judge, in whose division of the court an application for a change of venue was filed, has ordered the cause transferred to another division of the court, he has no jurisdiction of the case thereafter, and cannot entertain an amended application asserting the prejudice of a judge of another division who has qualified since the original application was filed.

2. ——: **Prejudice of Other Judges: No Evidence.** Where the application for a change of venue from the county alleges a prejudice of all the judges, the judge to whom the application is made should deny the change as to the judges of the other divisions of the court, unless there is evidence produced that they are prejudiced.

3. **ABSTRACT: Exclusion of Evidence: Not Set Out.** Where the appeal is by the short method, and the abstract fails to show that appellant offered any evidence which was by the trial court excluded, the appellate court cannot determine whether or not the court erred in excluding certain evidence which it is contended was competent and material. If the evidence was offered and excluded, the abstract should so preserve and present it, that the appellate court may determine whether or not the trial court was in error, and if it does not it is a defective abstract.

4. ——: ——: **Preserved in Briefs.** The appellate court must look to the abstract of the record for the evidence offered and excluded, and not to the briefs of counsel.

5. **EVIDENCE: Census Reports: Age.** United States census reports, and certified copies thereof, containing the name, age, sex, color and occupation of inhabitants of this country, being public official records, required by law to be kept, and made by sworn public officials, are competent evidence to show the age and date of birth of such inhabitants.

6. ——: **No Exception.** A contention that certain evidence was inadmissible will not be upheld on appeal, unless an exception was saved to the introduction of the evidence at the trial.

7. **POWER OF ATTORNEY: Cancellation: Other Lands.** The judgment cancelling a power of attorney given by appellants,

empowering their agent to sell the lands in suit and other lands, will not be reversed as embracing other lands, if by a reasonable construction thereof it is seen to mean that the power is cancelled only to the extent that it affects the title to the land in suit.

8. LIMITATION: Deed Made in Infancy: Female: Subsequent Marriage. A female who made a deed before she was twenty-one and did not marry until after she was twenty-two, cannot tack the disability of infancy to the disability of marriage. The Statute of Limitations began to run against her from the date she became of age, and if she did not disaffirm her deed within the time prescribed by statute she is barred.

9. MUTILATING EVIDENCE. The mutilation of a tombstone which recited the age of the ancestor upon whose age the case turns, and the absence from the family Bible of the family record showing her date of birth, are, to say the least, suspicious matters.

Appeal from Jackson Circuit Court.—*Hon. Andrew F. Evans*, Judge.

AFFIRMED.

*Samuel P. Forsee, William C. Forsee* and *H. H. McCluer* for appellants.

(1) Refusal of change of venue a reversible error. (a) The court erred in not changing the venue in pursuance of the application filed November 5, 1902, by sending the cause to some county other than Jackson county. The transfer of the cause to Division 5 of the same court was not a change of venue. State v. Lehman, 182 Mo. 458; State ex rel. v. Flournoy, 160 Mo. 324; Railroad v. Perkins, 125 Ill. 127; Meyer v. Walker, 31 Ill. 353. (b) It was reversible error for Judge Gibson in Division 1 of said court to refuse from November 6, 1902, to November 29, 1902, to pass on this application. He erred in so refusing to pass upon said application until Judge Evans, a newly-elected judge, took the bench on said November 29th. Barnes v. McMullins, 78 Mo. 265; Heald v. Hendy, 65

Cal. 321; Brady v. The Times-Mirror Co., 106 Cal. 56; Remington Sewing Machine Co. v. Cole, 79 Cal. 318; Ah Fong v. Stearns, 79 Cal. 30; Hennessey v. Nichols, 105 Cal. 138; Powell v. Sutro, 80 Cal. 559; State v. Shipman, 93 Mo. 157; State v. Blitz, 171 Mo. 539; Raming v. Railroad, 157 Mo. 477; Railroad v. Holliday, 131 Mo. 453; State to use v. Matlock, 82 Mo. 455; Bruce Lumber Co. v. Hoose, 67 Mo. App. 264. Judge Evans, of Division 5 of said court, erred in not sustaining the supplemental application for a change of venue filed in his court January 12, 1903, after the cause had been docketed in his division of said court. The refusal to remand said cause to Division 1 was reversibly erroneous. Penfield v. Vaughn, 169 Mo. 371; State ex rel. v. Perkins, 139 Mo. 106. (2) (a) The conclusions of law drawn by the court are not only in conflict with the authorities cited under other points in this brief, but absolutely ignore the rulings of this court in the Linvill-Greer case, where every salient and dispositive fact herein involved was determined by this court. Linvill v. Greer, 165 Mo. 380. (b) This is an action under section 650, Revised Statutes 1899. It was tried by both sides as an action at law, both sides asking declarations of law. The court was required to pass upon every phase of the issues in order to determine and to define the title of the parties. (3) The court erred in decreeing a cancellation of the power of attorney. (4) The court erred in excluding competent evidence offered by appellants. The declarations of members of the Jones family concerning ages and seniority of the Jones children were admissible upon proof (a) of the fact that the declarant was a member of the Jones family by blood or marriage, and (b) that such declarant was dead. They were not declarations *ante litem motam*. There was no controversy. 1 Wharton, Ev., secs. 202, 204, 213, 193 to 213; Chamberlain's Best on Ev., pp. 476, 477; 1 Greenleaf, Ev., secs. 103, 134,

104, 131; 1 Taylor on Ev., secs. 571, 23a, 630n1; 1 Phil. Ev., 203-215; 2 Taylor on Ev., sec. 631; Monkton v. Atty.-Gen., 3 Russ. & M. 161. "So the date of a person's birth may be testified to by himself or by members of his family, although they know the facts only by hearsay based upon popular tradition. . . . The time of a birth may be shown by the declaration of a deceased member of the family, though there is a family register of births which is not produced; the grade is the same." 2 Taylor, Ev., sec. 427; Holton v. Manteufel, 51 Minn. 185; Clements v. Hunt, 1 Jones L. 400; Swink v. French, 11 Lea (Tenn.) 78; Watson v. Brewster, 1 Pa. St. 381; Byers v. Wallace, 87 Tex. 503; 1 Whart., Ev., sec. 212; State v. Cougat, 121 Mo. 463; State v. Marshall, 137 Mo. 469. (5) The court erred in admitting incompetent evidence. (a) The census reports were inadmissible (a) because there was no evidence showing who made the entries upon the census books whereof an alleged copy was produced; nor (b) who made the original statement or report which it is alleged were transcribed upon the census books; nor (c) that any enumerator got any information of any sort from any member of the Jones or Priddy or Linvill families; nor (d) from what source such enumerator obtained any data concerning the ages or seniority of any person. The census was taken primarily to enumerate the people, and is admissible as being the best available evidence concerning the population of a given city or State, but is not evidence of the age, or place of birth of an individual. Hegler v. Faulkner, 153 U. S. 109; Ins. Co. v. Schwenk, 94 U. S. 597; Holton v. Manteufel, 51 Minn. 187; Ins. Co. v. Tisdale, 91 U. S. 245; Evanston v. Gunn, 99 U. S. 666; Dinan v. Smith, 38 How. Pr. 466; Davis v. Clements, 2 N. H. 390; Boundred v. Del Hays, 20 N. J. L. 328; Enfeld v. Ellington, 67 Conn. 459; Cushing v. Railroad, 143 Mass. 77; Ins. Co. v. Rosengale, 77 Pa. St. 515; Connor v. Ins.

Co., 78 Mo. App. 131; Childress v. Cutler, 16 Mo. App. 44; Buffalo v. Knights, etc., 126 N. Y. 450; 3 Taylor, Ev., secs. 1660, 1665, 1667; 1 Greenl. Ev., 407, 408. (b) The certificates signed by the director of the census were particularly objectionable, because they were summaries made or conclusions drawn by him from alleged records. "He is not competent to summarize the effect of the record and state, as the result of his examination, that a certain fact exists or is shown by his records." McGuire v. Sayward, 22 Me. 230; Tissman v. Friends, 103 Mich. 185; School v. Tuttle, 26 N. H. 470. (c) Only such parts of a public register are admissible, in any event, as record such facts as occurred in the presence of or were known to exist by the recording officer. Thus, a register of baptisms may be competent to establish the fact of baptism, but not the date of birth or age of the child, nor whether it be the child of A or B. 1 Greenl. Ev., secs. 493, 483, 162n; 2 Phil. Ev., 108; Wiggins Ferry Case, 47 Mo. 524; Rex v. North Petherton, 5 Barn. & Cres. 508; Clark v. Trinity Church, 5 Watts & S. 266; Burghart v. Angerstein, 6 C. & P. 600; Rex v. Chapham, 4 C. & P. 29; Huet v. Le Mesurier, 1 Cox Eq. 275; Childers v. Cutler, 16 Mo. 24; In re Wintle, L. R. 9 Eq. 373; Filler v. Shotwell, 7 W. & S. 14; Brady v. Hicks, 1 Pike 232; Hale v. Palmer, 5 Mo. 403; Durfee v. Abbott, 61 Mich. 471; Wilcher v. McLaughlin, 115 Mass. 167; Weaver v. Leiman, 52 Md. 708; Sitler v. Gehr, 105 Pa. St. 577; Kennedy v. Doyle, 10 Allen 167; Townsend v. Pappnell, 99 Mass. 40; Butler v. St. Louis Ins. Co., 45 Iowa 93. The following were census cases: Hegler v. Faulkner, 153 U. S. 109; Baltells v. Tallman, 96 Ala. 405; In re Wintle, L. R. 9 Eq. 373. Especial attention is invited to: Weaver v. Leiman, 52 Md. 708; Sitler v. Gehr, 105 Pa. St. 577; Kennedy v. Doyle, 10 Allen 167. The Federal statutes under which the census was taken provided that the original blanks used by the enumera-

tors should be filed, etc. These original reports were the best evidence of their contents, and not the alleged epitomes made in Washington from them. No excuse was made for the non-production of these originals. (d) The court erred in admitting statements and declarations made by persons not members of the family in question tending to show what the reputation in the community was concerning the age or seniority of the Jones children. Such reputation is only admissible (a) when testified to by members of the family, and (b) it must be confined to family reputation or tradition. Dupoister v. Gagany, 84 Ky. 43; Morgan v. Purnell, 4 Hawkes (N. C.) 95; Barnum v. Barnum, 42 Md. 304; Doe v. Auldjo, 5 Q. B. U. C. 171; Trust Co. v. Rosenagle, 77 Pa. St. 516; Wallace v. Howard, 30 S. W. 711; Henderson v. Cargill, 31 Miss. 419; Northrop v. Hale, 76 Me. 306; DeHaven v. DeHaven, 77 Ind. 236; Branch v. Lumber Co., 56 Fed. 707; 1 Whart. on Ev., sec. 212. (e) Estimates by persons not members of the family concerning age or seniority may sometimes be admitted to show that a person was eight or ten years older than he claimed to be, but not to show a difference of one or two years. Elsner v. Sup. Lodge, 98 Mo. 645. (f) The casts and photographs of the Priddy monument were inadmissible, (a) because it was not shown that the age inscription thereon was treated as authoritative by the family, and (b) because it was not shown that the persons who erected it were dead or inaccessible. 1 Whart. Ev., secs. 219, 220; Haslam v. Crow, 19 W. R. 969; Leggett v. Boyd, 3 Wend. 379; Clement v. Hunch, 1 Jones, L. 400; Divan v. Ben. Assn., 201 Pa. St. 363. (6) Effect of the deed of May 4, 1853, signed by Priddy and wife to Elizabeth Jones. (a) The deed of Priddy and wife and Elizabeth Jones, dated May 4, 1853, conveyed Priddy's curtesy in the lands of his wife, if it was not conveyed by the former deed dated October 9, 1852. Miller v. Quick, 158 Mo. 503;

Beal v. Hosman, 38 Mo. 435; R. S. 1865, p. 464, sec. 14; Hord v. Taubman, 79 Mo. 101; Missouri cases cited under point 6b.  (b)  The record shows that Elizabeth Jones was seventeen years old at the date of this deed.  In July, 1855, she intermarried with William Linvill.  The widow Jones' life life estate terminated upon her death in 1869.  Defendant, and those under whom he claims, did not and do not claim to have gone into possession of the dower lands or to have acquired any right or title thereto until the termination of Mrs. Jones' life estate in 1869.  Hence, at the time they begun to assert their alleged right and title (1869), and to have gone into possession (1869), both were married women.  As their husbands did not make entry upon the dower lands, or otherwise effectually interrupt the possession of defendant's grantors, they (the husbands) became divested of their estates by adverse possession.  Such adverse possession was as effectual to divest them of their estates as proper deeds would have been, and they could not, whether sole or married, disaffirm prior to attaining their majorities, and they were not required to do so after becoming *femmes covert*.  At the date of the deed in 1853, Mrs. Priddy was under the double disability of infancy and coverture.  When an adverse claim was first asserted by defendant's grantors (1869), Elizabeth Jones had become a married woman.  As both women were married women at the date the hostile claim was asserted, and continuously thereafter remained under such disability, they were not required during such disability to disaffirm their alleged deeds, and no adverse possession short of that required to complete a bar (10 years) under the Statute of Limitations could interfere with their right, or with the right of their heirs, to disaffirm the deeds after the termination of such disabilities.  No laches is imputable to them because of the delay.  There is not a scintilla of evidence tending to

show confirmation. Indeed, nothing of the sort is claimed. Harris v. Ross, 86 Mo. 89; Yanse v. Norcum, 12 Mo. 1. c. 563; Huth v. Carondelet, 56 Mo. 210; Lacy v. Pikler, 120 Mo. 388; Throckmorton v. ·Pence, 121 Mo. 59; Sim v. Everhart, 102 U. S. 300; Richardson v. Pate, 93 Ind. 423; Stringer v. Life Ins. Co., 82 Ind. 100; Sims v. Bardena, 86 Ind. 87; Miles v. Lingerman, 24 Ind. 385; Dodds v. Benthall, 4 Heisk. 601; Mathews v. Davis, 2 Caldw. 443; Williams v. Baker, 71 Pa. St. 476; Burch v. Linton, 78 Va. 584; Sims v. Smith, 86 Ind. 577; Vaughn v. Parr, 20 Ark. 600; Drake v. Ramsey, 5 Ohio 252; Cressinger v. Lessee Welch, 15 Ohio 156; Prant v. Wilsey, 28 Mich. 164; Moore v. Abernathy, 7 Blackf. 442; Gillespie v. Bailey, 12 W. Va. 76; Lindell v. Lindell, 142 Mo. 61.

*C. O. Tichenor, O. H. Dean* and *Lathrop, Morrow, Fox & Moore* for respondent.

(1) There was no error in the matter of the change of venue. Under the recent rulings of this court in Eudaley v. Railroad, 186 Mo. 399, and Guy v. Railroad, 197 Mo. 174, there can be no valid objection made to the action of the court in sending the cause from Division 1 to Division 5. (2) The evidence of declarations of deceased persons offered by plaintiffs was not admissible and should have been excluded. The general rule of law is that hearsay evidence is not admissible, and it is an exception to the general rule which permits the introduction of evidence of the declarations of deceased persons respecting pedigree. This exception to the rule is founded upon necessity, and upon the assumption that at the time the declaration is made, the mind of the declarant is free from any taint or bias arising from the existence of a controversy respecting the matter about which the declaration is made. When evidence of the declarations of deceased persons is offered to establish pedigree, it be-

comes incumbent upon the person offering the testimony to show affirmatively that the declarations were made prior to the *lis mota* or origin of the controversy. The controversy does not necessarily mean a suit, but it means such an agitation of the question as would be calculated to produce a bias or prejudice in the mind of the declarant in favor of or against the claimant, or such as will afford an opportunity for the manufacture of declarations favorable to one side or the other of the controversy. 22 Am. and Eng. Ency. Law, 645; Stein v. Bowman, 13 Pet. 209; Ellicott v. Pearl, 10 Pet. 412; Chapman v. Chapman, 2 Conn. 347; Nehring v. McMurrian, 57 S. W. 943; Schott v. Pellerin (Tex.), 43 S. W. 944; Wallace v. Howard, 30 S. W. 711; Butler v. Mount Garret, 7 H. L. Cas. 633. (3) The certified copies of the census returns offered by the defendant were not only clearly admissible in evidence, but in this case they import absolute verity. Reynolds v. Ins. Co., 88 Mo. App. 679; Flora v. Anderson, 75 Fed. 231; Weber v. Collins, 139 Mo. 507; Evanston v. Gunn, 9 Otto 660; State ex rel. v. County Court, 98 Mo. 360; St. Louis v. Arnot, 94 Mo. 279; DeArmond v. Neasmith, 32 Mich. 233; Dunne v. Railroad, 131 Mo. 7; Ins. Co. v. Schwenk, 94 U. S. 598; State v. Braskamp, 87 Iowa 591; People v. Williams, 64 Cal. 91; Kokes v. State, 55 Neb. 699; People v. Page, 6 Utah 356; Lycett v. Wolf, 45 Mo. App. 496; Railroad v. Trayes, 17 Ill. App. 136; Childress v. Mullanphy, 16 Mo. 45; Bennett v. City, 106 Iowa 630. (4) The evidence of W. D. Linvill, T. J. Linvill, Flora Linvill, and others should not have been received, since they were disqualified under section 4652, Revised Statutes 1899. (5) The tombstone that was erected at the grave of Nancy Priddy was originally inscribed "aged 66 years" and someone in the interest of the plaintiffs has undertaken to change this so as to read "aged 60 years." The mutilation of the tombstone is significant, because: 1st. It is strong

evidence to show that Mrs. Priddy was of full age when she signed the deed; 2nd. It demonstrates the willingness of someone in the interest of the plaintiffs to resort to desperate measures to manufacture evidence to bolster up a dishonest case. Oglebay v. Corby, 96 Mo. 285. (6) The plaintiffs should be charged with the destruction or mutilation of the Jones family Bible; and the law will presume that the evidence contained therein was adverse to them. (7) Plaintiffs are barred by lapse of time. (a) The deed of May 5, 1853, not only appears in evidence, but is pleaded by plaintiffs, and they seek to avoid it by claiming that Nancy and Elizabeth were minors when they executed it. 'Of course, the burden of proof in this regard is upon them. They must clearly make it appear that this deed executed over half a century ago was executed by minors. Campbell v. Wilson, 23 Tex. 253. So far as Nancy is concerned, it is not only not certain that she was a minor, but it appears certain that this woman who had been married about four years, when she executed the deed, was of age. It is claimed that the petition in the partition proceedings shows Nancy to have been a minor. We claim that the record shows to the contrary, but assuming it to be true as claimed, it has no effect. Defendant does not claim through these proceedings. He would have the title just the same, even though they were held void or never existed. Again, how can an adult be reduced to a minor by a pleading? As to what is adjudicated in a suit is well expressed in DeSolar v. Hauscome, 158 U. S. 221. (b) Plaintiffs as to interests both of Nancy and Elizabeth are barred by the 30-year statute. It is over 30 years from the time that the dower estate was merged and over 49 years from the deed to Coffman. Sec. 4268, R. S. 1899; Collins v. Pease, 146 Mo. 135; Robinson v. Allison, 91 S. W. 115. The case of Linville v. Greer, 165 Mo. 380, upon which plaintiffs so much rely, was one

where the respondent was not represented.   J. G.
Smith is marked as appearing for him, but he neither
argued the case nor filed a brief, and the opinion on its
face shows the danger of passing upon the whole case,
hearing only one side of it.   The facts were not de-
veloped and the law was not presented — the law being
very intricate, — the decision being somewhat in con-
flict, due to the fact that the judges did not state their
ideas clearly, and did pass upon points not in the
case.   The law on the subject of deeds by minors is not
discussed, and the case stands as if those claiming
against these heirs were claiming title simply by ad-
verse possession — a possession originally obtained as
trespassers or under color of title, having no title.
Shipley v. Bunn, 125 Mo. 449; Ferguson v. Bell's
Admr., 17 Mo. 351; Singer Mfg. Co. v. Lamb, 81 Mo.
225; Cooper v. Hempstead, 18 Mo. 271.   It has been
held in many cases in our State that the statute did not
run, because the one against whom it is claimed could
not bring suit, — as where there is an outstanding
dower or courtesy, or where a married woman could
not sue in ejectment (before our last statute on the sub-
ject), because the husband was entitled to possession,
— he alone being able to bring suit.   But this state of
affairs does not exist in case of suits by *femmes covert,*
to enable them to disaffirm a deed made during infancy.
Nancy and Elizabeth, at any time during their lives,
could have dissaffirmed their deeds, not only by service
of notice upon the persons holding the legal title, tell-
ing them that they dissaffirmed their deeds and de-
manding possession, but by bringing suits therefor.
Walter v. Walter, 48 Mo. 145; Woodward v. Wood-
ward, 148 Mo. 245.   Minors cannot disaffirm during mi-
nority, but when they become adult, that instant they
have the right to disaffirm.   And wherever there is a
right in law, there is always some remedy to enforce
it, and if there is none at law, that very fact gives them

the right to proceed in equity. Craig v. Van Bibber, 100 Mo. 591; Kendall v. Lawrence, 22 Pick. 540; Dyer v. Wittler, 89 Mo. 97. So, when the Statute of Limitations begins to run in the lifetime of the ancestor, it will continue to run against an heir, who is a *femme covert*, or laboring under any other statutory disability at the time of the ancestor's death. Pim v. St. Louis, 122 Mo. 654; Cunningham v. Snow, 82 Mo. 592; McDonald v. Hovey, 110 U. S. 619; Rogers v. Brown, 61 Mo. 195; Reed v. Painter, 145 Mo. 354. This right (to disaffirm) ought in justice to all parties and as a matter of public policy to be exercised within a reasonable time or be treated as lost by waiver. Dolph v. Hand, 156 Pa. 97; Tunnison v. Chamberlin, 88 Ill. 387; Harkings v. Dollarhide, 24 Cal. 196; Kline v. Bebee, 6 Conn. 494; Jones v. Butler, 30 Barb. 641; Richardson v. Boright, 9 Vt. 370; Holmes v. Blogg, 8 Taunton 35; Boyden v. Boyden, 9 Met. 579; Boody v. McKenney, 23 Me. 517; Robinson v. Weeks, 56 Me. 102; Little v. Duncan, 9 Rich. (S. C.) L. 59; Thormarlen v. Karppel, 86 Wis. 380; Greenwood v. Coleman, 34 Ala. 150 (by bill in equity); Ferguson v. R. N., 73 Tex. 347 (two years too late).

GRAVES, J.—In this action the petition is in two counts. The second count is an ordinary petition in ejectment. The first count is lengthy, but the salient facts pleaded are as follows: that Thomas Jones died in Jackson county, Missouri, in 1843, leaving nine minor children and a widow; that among these children were Nancy Jones and Elizabeth Jones; that Nancy married James J. Priddy in 1850; that in about the year 1854 Elizabeth, yet a minor, married William Linvill; that Thomas Jones at the time of his death was seized of lands in Jackson county, Missouri, of which there was a tract of land (minutely described in the petition) which was duly assigned to Martha Jones,

his wife, for life in lieu of dower in all his lands; that Martha, the widow of Thomas Jones, died in 1868; that James J. Priddy died in July, 1896; that his wife, Nancy, died April 10, 1892; that Elizabeth Linvill died November 3, 1892; that William Linvill is still living; that Martha Jones held possession of this tract of land until her death in 1868; that on May 5, 1853, Nancy Priddy and her husband and Elizabeth Jones executed a deed to Lott Coffman in which they attempted to convey all their interest (being a two-ninths interest) in said lands to said Coffman; that at the date of said deed both Nancy and Elizabeth were under the age of twenty-one years; that long before the beginning of the suit, the plaintiffs, who are lineal descendants of Nancy and Elizabeth, disaffirmed the said deed and gave record notice thereof; that both Nancy and Elizabeth disaffirmed said deed prior to their death; that the plaintiffs now so disaffirm said deed and claim a two-ninths interest in the land mentioned in said deed; that the land sued for and involved in this suit is a part of the tract held by Martha Jones aforesaid; that said land involved in this action is in the possession of the defendant Boice, who denies that plaintiffs have any interest therein; that Elizabeth Jones was married to William Linvill while yet under twenty-one years old; that in 1852, James J. Priddy conveyed his estate by curtesy to Lott Coffman; that immediately after executing the deed in 1853, Priddy and wife and Elizabeth Jones removed from Missouri and never thereafter returned.

These are the substantial facts in the first count of the petition. There are allegations showing the relationship of the parties plaintiff to Nancy Priddy and Elizabeth Linvill, and allegations as to the minority of some and the due appointment of the next friend named in the petition. By the prayer of the petition

201 Sup—21

the court is asked to ascertain, determine and declare the interest of all parties to the action in and to the real estate involved in the suit, which is particularly described, and to declare said deed from Nancy Priddy and husband and Elizabeth Jones to Lott Coffman to be void and of no effect and for such other and further relief as to the court may seem proper.

The answer in the first count thereof is a general denial.

In the second count of the answer the thirty-year Statute of Limitations is invoked.

By the third count of the answer the defendant avers the deed from Nancy Priddy and husband and Elizabeth Jones to have been executed after Nancy Priddy was more than twenty-one years of age and at a time when Elizabeth Jones was unmarried, and of lawful age, and that the said Elizabeth Jones became twenty-one years of age long before her marriage and at no time disaffirmed said deed, although more than a reasonable time for that purpose had elapsed after she had reached her majority and before her marriage.

By the fourth count of the answer is alleged the great advance in value of the whole property, of which the property in dispute forms a part; and the numerous valuable improvements put on all of the property, formerly in the possession of Martha Jones, as well as on the portions thereof in dispute. It is further alleged that all this was done with the knowledge of the plaintiffs and their ancestors, and for that reason there has been *laches,* and plaintiffs are estopped from claiming title.

The fifth count of answer is in the nature of a cross-bill wherein it is contended that the claim of plaintiffs and two certain powers of attorney given by Mrs. Priddy and husband and Mrs. Linvill and husband to S. P. Forsee, are clouds upon defendant's title. The prayer in said count is as follows:

"Wherefore, this defendant prays for the order and decree of this court adjudging that the title to the property in controversy is in this defendant free and clear of any claim on the part of these plaintiffs, and that the said deed made by James J. Priddy, Nancy A. Priddy and Elizabeth Jones in 1853 may be decreed to be the irrevocable deed of the said grantors and that the plaintiffs be decreed to have no right, title or interest in and to said property of this defendant, and for such other and further relief as may be equitable and just."

Reply was general denial, coupled with some other matter alleging notice of disaffirmance upon the part of Mrs. Priddy and Mrs. Linville, given by the record of the powers of attorney to S. P. Forsee.

The cause was pending in Division One of the circuit court of Jackson county, over which Judge James Gibson was presiding. On November 5, 1902, plaintiffs filed application for a change of venue to some county other than Jackson, charging that each of the judges of the five several divisions of that court were prejudiced against plaintiffs, and that "the opposite party, the defendant herein, had an undue influence over the minds of each of said judges." Knowledge of said conditions was said to have been brought home to plaintiffs on November 4, 1902.

This motion was not disposed of until November 29, 1902. On November 4, 1902, it appears that Hon. Andrew F. Evans had been elected judge of Division Five to succeed Judge Teasdale, and he qualified on the 29th day of November, 1902. On November 22nd, there was filed a voluminous motion asking Judge Gibson to take up and pass upon the application for change of venue. Notice was given that this last-named motion would be called up on November 24th. It is alleged that Judge Gibson refused to take it up on the 24th, and did not take it up until the 29th at which time he

granted a change of venue to Division No. Five. · A lengthy colloquy between court and counsel is said to have taken place on the 29th, and is printed in the record, but in our view of the law of the case, it is not necessary to set out these random shots.

On December 3, 1902, in Division One, the plaintiffs filed a lengthy motion to strike out the following part of the order made on November 29th, which part said motion was leveled against is as follows:

"And doth order that the venue of this cause be changed from this court to Division No. 5 of the circuit court of Jackson county, Missouri, at Kansas City, which said Division No. 5 is now presided over by Hon. Andrew F. Evans, the regular judge thereof, to which action the court in sending said cause to said Division No. 5, said plaintiffs except."

This motion was taken up on December 6, 1902, and a mass of testimony, documentary and otherwise, taken and heard, which will be noticed in the course of this opinion if necessary. The motion was by Judge Gibson overruled.

Again on December 6th, after the disposition of the motion to strike out, plaintiffs filed in Division No. One a motion asking for leave to file an amended application, in which was included the name of Hon. Andrew F. Evans, as well as Hon. F. C. Farr, who was acting as special judge in Division No. Four, Judge Henry, the regular judge, being sick.

This motion Judge Gibson refused to entertain, on the ground that his division of the court had lost jurisdiction.

Then follows a motion in Division No. Five to remand the cause to Division No. One. This was overruled by Judge Evans.

At the January term, 1903, plaintiffs filed in Division No. Five application for change of venue, alleging prejudice upon the part of all the judges of the court,

and prejudice of the inhabitants of the county of Jackson. This motion was likewise overruled by Judge Evans.

After running the gauntlet of these divers and sundry motions with the great mass of documentary and other evidence introduced thereon, the case was finally tried in Division No. Five of the Jackson County Circuit Court at the January term, 1903, and taken under advisement until the April term, at which time a finding of facts was filed by Judge Evans, pursuant to request of both parties. This finding of facts is fully sustained by the evidence that was admitted by the court, although there are many sharp conflicts in the testimony.

The said finding of facts is as follows:

"Thomas Jones, deceased, died in the year 1843, seized of fifty-one and a fraction acres of land in Jackson county, Missouri; the land described in the petition in this case, as follows, beginning at the northwest corner of Independence Boulevard and Wabash avenue, thence north 172.75 feet, thence west 143 feet, thence south 172.75 feet, thence east 143 feet, to the place of beginning, in Kansas City, Jackson county, Missouri, is a portion of the land above described of which said Thomas Jones died seized and intestate, leaving surviving him his widow, Martha Jones, and nine children, James W. Jones, Nancy Jones, Mary Jones, Elizabeth Jones, Thomas Dudley Jones, Emily Jones, Caroline Jones, Benjamin Jones and Eliza Jones, all of said children being minors at the time of his death. On the —— day of October, 1849, the said Nancy Jones intermarried with one James Priddy. On the 9th day of October, 1852, Nancy Priddy and her husband James Priddy, executed and delivered to one Lott Coffman, a deed which was acknowledged before a justice of the peace in Jackson county, purporting to convey Mrs. Priddy's one-ninth interest in the lands of

which Thomas Jones died seized, except forty acres thereof which had before that time been sold. By proceeding begun on the 11th day of February, 1852, by said James W. Jones, as plaintiff, against the said Martha Jones and her other eight children the estate of the said Thomas Jones was partitioned. In the petition therein it was alleged that said Nancy and Elizabeth Jones were minors. In the same proceeding and on the 19th day of March, 1852, the record recites that 'On motion of plaintiff court appoints John W. Reid guardian *ad litem* for infant defendants and said guardian files answer. James Priddy, Nancy Priddy and Martha Jones and Mary Jones, failing to answer, the court orders that the petition be taken against them as confessed.' In that suit certain lands, including the lands in question in this suit, were set off to Martha Jones as her dower.

"On or about the 5th day of May, 1853, said Nancy Priddy and James Priddy, her husband, and Elizabeth Jones, executed a joint deed to said Lott Coffman which conveyed to said Coffman their undivided two-ninths interest in the dower lands above referred to, subject to said dower. The validity and sufficiency of this deed, which is recorded in Book U at page 133 in the office of the recorder of deeds of Jackson county, Missouri, is now in question.

"Nancy Priddy on the 5th day of May, 1853, the date of the deed to Lott Coffman, was twenty-one years of age. In May, 1853, James Priddy and wife, Nancy Priddy and Elizabeth Jones, left Missouri and went to California. Elizabeth Jones on the 1st day of June, 1855, married one William Linvill at which date she was more than twenty-two years of age. Neither the said James Priddy or his wife Nancy, nor said Elizabeth Linvill, ever returned to Missouri. Mr. and Mrs. Priddy lived in lawful wedlock as husband and wife from 1849 to April 10th, 1892, when she died. He died

in July, 1896. Mrs. and Mr. Linvill lived in lawful wedlock as man and wife from June, 1855, until about the second day of November, 1892, at which time the said Elizabeth died in the State of ——. Her husband, William Linvill, is still living and resides in Jackson county, Missouri. The said Nancy Priddy left surviving her, her husband, James Priddy, a son, George W. Priddy, and the following named grandchildren: Bertha M., Nora A., and George M. Rowland; James J., Nancy and Lillie Dugan; Floyd G., Albert and Ray R. Helm. The said Elizabeth Linvill left surviving her her husband, William Linvill, and four children: W. B., T. J. and Martha Linvill, and Jennie McCulloch, as her only heirs. The said Martha Jones held possession of said dower lands until the — day of —, 1868, when she sold and conveyed her interest in the same to said Lott Coffman. Said Martha died in the year 1869. The defendant was in possession of the land in controversy in this suit at the time this suit was commenced and said defendant, and those from and under whom he claims, have been in open, notorious, adverse and continuous possession of said lands for more than thirty-one consecutive years prior to the commencement of this suit. The plaintiff and those from and under whom they claim have not been in possession of said lands for more than thirty-one consecutive years prior to the commencement of this suit; and neither the plaintiffs nor any one from or under whom plaintiffs claim, have paid any taxes on said land during all that period. In the spring of 1895, a monument was erected by direction of James Priddy and his son, George W., at the grave of Mrs. Nancy Priddy. At the time it was erected it bore an inscription showing that she was sixty-six years of age at the time of her death. After said monument was erected the last of the two figures was altered for the purpose of making it appear from said inscription that Mrs. Priddy was sixty years of age in-

stead of sixty-six years of age at the date of her death.
August 31, 1887, said James Priddy and wife, Nancy,
and William Linvill and wife, Elizabeth, executed pow-
ers of attorney to S. P. Forsee, authorizing him as their
attorney to sue for, recover, take and receive possess-
ion of their respective interests in the lands of which
Thomas Jones died seized; said power of attorney
from Priddy and wife to said Forsee having been filed
for record and recorded in the office of said recorder
of deeds in Jackson county, Missouri, on the——day of
——, 188 —, in book ——, at page —. Afterwards, in
1888, the said William Linvill came to Missouri, visited
his said attorney and certain members of the Jones
family and from Benjamin Jones obtained the Jones
family Bible. At the time said Bible was delivered to
said Linvill, it contained a family record showing the
dates respectively of the birth of said Nancy Priddy
and said Elizabeth Linvill; said family Bible was then
taken by said Linvill to his home in the State of Ore-
gon; and said family Bible when offered in evidence
in this case was in a mutilated condition and contained
no trace of the record of the date of the birth of either
said Nancy Priddy or Elizabeth Linvill; it contained
only a statement that said Eliza Jones was born July
14, 1844. Eliza Jones was in fact born prior to Octo-
ber 14, 1843. As early as 1855, the said Nancy Priddy
and Elizabeth Linvill, in California, stated to W. P.
Linvill, husband of Elizabeth Linvill, that they would
get the land in question back in some way, some time,
if they could; and frequently thereafter spoke of mak-
ing an effort to recover said land; and as early as 1875,
said W. P. Linvill, husband of Elizabeth Linvill, con-
sulted an attorney in the State of Oregon concerning
their claim to the property in question; and during the
whole of this time said Nancy and Elizabeth were
claiming that they had an interest in the property on
the ground that they were minors at the time they ex-

ecuted the deed of May 5, 1853, recorded in said Book U. at page 133. At the time of the execution of said deed, and thereafter, on the first day of June, 1855, said land was used for farming purposes only,. and was not worth more than ten dollars per acre, and Kansas City was a small and unimportant town. At the time this suit was begun the said fifty-two acres of land was covered or partly covered by homes, splendid buildings and improvements estimated to be worth more than a million dollars, for several years has been within the limits of Kansas City, which increased in population to numbers of ——, and the fact that said land had been taken into the city was known to Priddy and Linvill as early as 1868 or 1870.''

Plaintiffs filed exceptions to both the finding of facts and the court's conclusions of law.

Judgment was for defendant upon both counts of plaintiffs' petition, and for defendant in accordance with the prayer of his cross-bill.

Motions for new trial and in arrest of judgment were filed and by the court overruled, after which the cause was duly appealed to this court.

The above, abbreviated as much as could be done, is a fair statement of the case, except the numerous errors assigned throughout the trial upon the merits, which will be taken up in the course of the opinion.

I. The first contention of plaintiffs is their failure to get a change of venue from Jackson county.

If ever parties made a strenuous effort to get out of the county it was made in this case. Upon this subject the applications and motions, with the evidence thereon, cover sixty-eight printed pages, of record. As fast as new judges were qualified after the election in 1902, prejudice was discovered to be lurking in their minds. If an attorney happened to be sitting in the place of a sick judge, prejudice, by some X-Ray process, was discovered in his mind. It was first discover-

ed on November 4th, 1902, as to Judges Gibson, Slover, Gates, Henry and Teasdale. After the election it was discovered as to Judges Gibson, Slover, Teasdale, Douglas and Evans, and as to Hon. F. C. Farr, sitting for Judge Henry from November to January. Such wholesale prejudice in the minds of honorable gentlemen sitting upon the bench was never before discovered. If so, the case has escaped our reading.

This strenuous effort upon part of plaintiffs was made before the opinions of this court in the cases of Eudaley v. Railroad, 186 Mo. 399, and Guy v. Railroad, 197 Mo. 174, for otherwise the volume of alleged facts found in this record, by the way of affidavits, would have remained in the minds of the parties rather than found expression as they did. Whether such conditions are the fault of the parties or the fault of the statutes concerning changes of venue, it is none the less lamentable. That out of eight men occupying positions on the bench, not one could be found with an unbiased mind toward parties litigant is certainly remarkable. And doubtless, though not apparent in the record, these judges were not even blessed with the acquaintance of the parties. But enough on this question.

Now going back to the question of change of venue. The first application to Judge Gibson included all the judges of the court, unless it could be said that Judge Evans before his qualification, which was on November 29th, was a judge thereof, because of the vote taken November 4th. On this application, no evidence was introduced in the presence of Judge Gibson tending to show prejudice upon the part of the other judges, and no reason assigned or shown except as found in the affidavit. When this application was being heard, in the colloquy between the court and counsel, Judge Gibson said, "I will hear any evidence you want to offer," to which counsel replied, "There is no use to offer tes-

timony, your Honor will not consider it.'' This is a sample of what occurred. The order granting this change of venue and sending the case to Division Five was then and there made. This order transferred the case and Judge Gibson's right to act further therein was at an end, and this renders unnecessary the consideration of other matters forced, by tenacity of counsel, upon Judge Gibson on December 6th. Judge Gibson lost jurisdiction November 29th, and any steps taken thereafter in his court were of no effect. Under the rulings in the Eudaley and Guy cases, the sending of this case to Division Five was proper. The question is fully discussed in those cases, and we see no reason for departing from the views therein expressed, but on the other hand reannounce our adherence thereto, with the hope that it will at least have the effect of curtailing the number of applications and affidavits in such cases in the future. Those cases likewise dispose of the motion to remand and later application for change of venue filed in Division No. Five. One change of venue has been legally granted and the same parties were not entitled to another. Plaintiffs' first contention is therefore ruled against them.

II. The appeal in this case was taken by filing a certified copy of the judgment and order granting the appeal, instead of a full transcript. In other words, it is here by ''the short method.'' Plaintiffs, now appellants, have filed an abstract of record. In this, so far as it relates to the testimony in the case, we find the oral testimony largely given in the narrative form. This rule is proper under our rule No. 13, except under certain contingencies in the rule mentioned.

One point made in the brief of plaintiffs, reads thus: ''The court erred in excluding competent evidence offered by appellants: (a) The declarations of members of the Jones family concerning ages and seniority of the Jones children were admissible upon proof

(1) of the fact that the declarant was a member of the Jones family by blood or marriage, and (2) that such declarant was dead.''

We have read and reread this abstract of record, and especially Vol. II thereof, which contains the evidence. Nowhere do we find in this abstract where plaintiff offered any evidence which was by the court excluded. In this abstract plaintiffs' evidence in chief begins on page 1 and ends on page 151, where it is said: ''At this point plaintiffs rest their case.'' Defendant's evidence begins on page 151 and runs to page 329, where it is said: ''At this point defendant rested.'' The plaintiffs then offered in rebuttal the deposition of Mrs. V. C. Hinkle, the abstract of which extends from page 329 to page 335, then follows some testimony for defendant, and as we take it some additional for plaintiffs. There are 348 pages in all.

If testimony was offered and excluded by the court, the abstract of the evidence should so preserve it and present it that this court can say whether or not the trial court was in error. From the abstract it would appear that even the class of testimony claimed to have been excluded was admitted. At any rate, the abstract nowhere points out any specific testimony which was offered and excluded, and shows no exceptions to the action of the trial court in so doing. What the original bill of exceptions may show, we do not know, for that is not here. Upon this point the abstract is wholly insufficient under our rule. Matters of this kind must appear in the abstract, not in the brief, except in the discussion of the point made and saved in the record. The only information we have of this alleged error is what we find in the brief under point IV, as hereinabove quoted. We have searched the record as abstracted to see what the evidence offered and excluded really was, but failed to find it. Under such circumstances we have nothing to consider and pass

upon so far as the alleged error in refusing to admit testimony is concerned. This point will therefore have to be ruled against the plaintiffs.

III. During the course of the trial a number of certified copies of the U. S. Census reports were admitted in evidence offered by the defendant as bearing upon the age of Mrs. Priddy and Mrs. Linvill. In these the abstract of record before us shows that objections were made by plaintiffs, and exceptions saved as to the ruling of the court thereon, and we thus have here a matter for our determination. The first offered was that of the census of 1890, which showed the age of Mrs. Priddy to be 64 years and the age of Mrs. Linvill to be 56 years. The enumeration was made June 14, 1890. To the instrument is appended the following certificate:

"UNITED STATES OF AMERICA,
DEPARTMENT OF THE INTERIOR.

"Washington, D. C., June 14, 1902.

"Pursuant to section 882 of the Revised Statutes, I hereby certify that the annexed pages are true copies of the original schedules showing the members of the families of William P. Linvill and James J. Priddy of the county of Jackson, State of Oregon, as enumerated in the month of June, 1890, the same forming a part of the records of the Eleventh Census, of which the Secretary of the Interior is the custodian.

"In Testimony Whereof, I have hereunto subscribed my name, and caused the seal of the Department of the Interior to be affixed, the day and year first above written.        E. A. HITCHCOCK,
(Seal)                "Secretary of the Interior.
                              "EMcD."

To each of the other copies offered was a similar certificate. These records go back as far as the census

of 1830, when Thomas Jones, the father, lived in Rush county, Indiana. Were these copies so certified properly admitted in evidence? We think so. These are public official records, required by law to be made and kept, by sworn public officials of the law, and by law required to contain the name, age, sex, color, occupation, etc., of each inhabitant. The identical question came up in the case of Flora v. Anderson, 75 Fed. l. c. 231. In that case, SAGE, J., said:

"The defendants offered in evidence abstracts of the United States census official returns as to the families of James W. Flora, the foster father of complainant, and John W. Flora, the complainant, duly certified from the department of the interior for the several censuses from 1820 to 1890, both inclusive. It appears from the evidence of the complainant himself as a witness in this case that there was not in Campbell county, Kentucky, at any time, any other family by the name of Flora, of which he had heard; nor was there any person in that county bearing that surname, other than his foster father and mother and his own immediate family, excepting Robert Flora, brother of his foster father. Robert lived with the complainant some little time after complainant's foster father's death. These census returns show that the age of John W. Flora, complainant, was always computed as if he had been born in the year 1820. That such documents, being official registers, are admissible in evidence in so far as they contain statements as to matters which the law requires should be inquired into, reported upon, and then recorded, see 1 Greenl. Ev., sec. 483, and Steph. Dig. Ev., art. 34.

"The statutes under which these census returns were compiled are as follows: For the fourth census — that of 1820 — Act March 14, 1820 (3 Stat. 548); for the fifth census — that of 1830 — Act March 23, 1830 (4 Stat. 383); for the sixth census — that of 1840

— Act March 3, 1839, and Act February 26, 1840 (5 Stat. 331, 368) ; for the seventh and eighth censuses — those of 1850 and 1869 — Act May 23, 1850, and Act August 30, 1850 (9 Stat. 428, 445) ; for the ninth census — that of 1870 — the act the same as for the census of 1860, and in addition Act May 6, 1870 (16 Stat. 118) ; for the tenth census — that of 1880, Act March 3, 1879 (20 Stat. 475) ; for the eleventh census — that of 1890 — Act March 1, 1889 (25 Stat. 760) ; and acts February 22, 1890, and August 14, 1890 (26 Stat. 13, 313). Examination of these statutes will show that as to each census the enumerator was required by the law itself, and not merely by the direction of his superior officers, to investigate the record and particular matters which are shown in the abstract for that census; and that this investigation was to be made, where practicable, by inquiry from the head of the household in question. These records, therefore, are not simple public records, made for the express purpose of ascertaining and preserving proof of the facts there contained, but are records made by an officer under his official oath of declarations as to matters of pedigree, by persons whose declarations are competent proof upon that subject.''

Also, in the case of Evanston v. Gunn, 99 U. S. 666, admissibility of a record kept by the U. S. Signal Service Station at Chicago, was questioned. Justice STRONG said:

''It may be admitted there is no statute expressly authorizing the admission of such a record, as proof of the facts stated in it, but many records are properly admitted without the aid of any statute. The inquiry to be made is, what is the character of the instrument? The record admitted in this case was not a private entry or memorandum. It had been kept by a person whose public duty it was to record truly the facts stated in it. Sections 221 and 222 of the Revised Statutes

require meteorological observations to be taken at the military stations in the interior of the continent and at other points in the States and Territories for giving notice of the approach and force of storms. The Secretary of War is also required to provide, in the system of observations and reports in charge of the chief signal officer of the army, for such stations, reports and signals as may be found necessary for the benefit of agriculture and commercial interests. Under these acts a system has been established, and records are kept at the stations designated, of which Chicago is one. Extreme accuracy in all such observations and in recording them is demanded by the rules of the Signal Service, and it is indispensable, in order that they may answer the purposes for which they are required. They are, as we have seen, of a public character, kept for public purposes, and so immediately before the eyes of the community that inaccuracies, if they should exist, could hardly escape exposure. They come, therefore, within the rule which admits in evidence 'official registers of records kept by persons in public office in which they are required, either by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties or under their personal observation.' [Taylor, Evid., sec. 1429; 1 Greenl., Evid., sec. 483.] To entitle them to admission it is not necessary that a statute require them to be kept. It is sufficient that they are kept in the discharge of a public duty. [1 Greenl., Evid., sec. 496.] Nor need they be kept by a public officer himself, if the entries are made under his direction by a person authorized by him. [Galt v. Galloway, 4 Pet. 332.] It is hardly necessary to refer to judicial decisions illustrating the rule. They are numerous. A few may be mentioned: DeArmond v. Neasmith, 32 Mich. 231; Gurney v. Howe, 9 Gray (Mass.) 404; The Catherina Maria, Law Rep. 1 Ad. & Ec. 53; Cliquot's Champagne,

3 Wall. 114. We think, therefore, that there was no error in admitting the record kept by the person employed for the purpose by the United States Signal Service.''

To the same effect is Railroad v. Trayes, 17 Ill. App. 136. Nor are we without authority in Missouri upon this question. In Weber v. Collins, 139 Mo. 507, speaking in reference to the records kept at the U. S. Signal Service Station at St. Louis, this court said:

''We are of opinion that the records themselves would have been admissible as evidence of the character of the weather. The record is required to be kept by the laws of the United States. They are official, and a statute of the State provides that 'all records  . .. . kept in any public office of the United States   . . . not appertaining to a court, shall be evidence in this State.' [R. S. 1889, sec. 4844.] ''

In Moore v. Manufacturing Co., 113 Mo. l. c. 110, where a sworn copy of such records was used, we said: ''This court will take 'ex officio' cognizance of the fact that the signal service is a department of the government of the United States and the register of the weather kept by its officers is a public record. 'Where the proof is by a copy, an examined copy, duly made and sworn to by any competent witness, is always admissible.' [1 Greenl. on Evid., sec. 485; Wharton on Evid., sec. 639.] The fact that a certified copy of the record itself might have been admitted in no wise destroys the common law rule.''

Both as to the method of proof and competency, the California Court, in People v. Williams, 64 Cal. l. c. 91, has said: ''It is contended that the court erred in admitting in evidence the certificate of the superintendent above mentioned. We do not think so. The records of this census were under the care and in the custody of that officer, and on common law principles, as the

record could not be taken from his custody, a copy of such census, or any part of it, could be proved by a copy certified by him.''

In the very recent case of Levels v. Railroad, 196 Mo. l. c. 622, VALLIANT, J., speaking for this court, said: "A register as required by that statute was kept by the teacher of the school which Hattie attended for the term beginning September 4, 1899, and that register shows that her first day's attendance was November 6, 1899, and her age was then seventeen years. Defendant offered that register in evidence and it was excluded on objection of plaintiffs. The court erred in excluding the evidence; the register was a record which the law required to be kept and the evidence showed that it was kept in strict conformity to the requirement of the law. It was not record evidence in the strict sense of conclusiveness, but like the school enumeration lists and the United States census lists, it was competent evidence to be weighed in the balance with other evidence. [State v. Austin, 113 Mo. 538; Van Riper v. Morton, 61 Mo. App. 440; Reynolds v. Ins. Co., 88 Mo. App. 679; Ohmeyer v. Woodmen, 91 Mo. App. 189, l. c. 201; 1 Greenleaf on Evid. (16 Ed.), sec. 483; 9 Am. and Eng. Ency. Law (2 Ed.), 883.]''

In the Levels case the defendant had offered the enumeration lists, and had also offered, as in the case at bar, a certified copy of the U. S. Census schedules or lists, all bearing upon the question of age. The trial court had admitted the enumeration lists and the certified copy of the census lists, but had excluded the school register offered.

We have examined with care the numerous cases cited by plaintiffs. The nearest in point is the case of Hegler v. Faulkner, 153 U. S. 109. The question was as to the age of a half-breed Indian, George Washington by name. Under instructions, an agent of the office of Indian Affairs had taken a census of persons of

Indian blood, entitled to an allotment of lands under the treaty of Prairie du Chein. In taking this list or census, under instructions from his department, the agent took not only the name, but the age and sex. In this case the court holds the record incompetent on the question of age, but uses this significant language: "But neither the treaty, the act of Congress, nor the instructions of the department contemplated any special inquiry into the ages of the Indians. It is true that, in the letter of instructions, the agent was directed to report as well the age as the sex and tribal relations of the claimants. But this was merely to enable the agent, when he came to allot the lands, to identify the persons entitled to participate."

It will be seen that the court puts it upon the ground that there was no law, either by treaty or statute, requiring such a record to be compiled and kept. Not so with the census laws. These laws require the public officer to gather and record this information, just as our State law requires the school teacher to ascertain and record the name, age and sex of his pupils.

We have no hesitancy in saying that these census lists or schedules were competent evidence, to be weighed by the court for what they are worth, and that the copies were properly certified, although the last proposition is hardly questioned by plaintiff.

IV. It is urged that the conclusion reached in this case ignores the holdings in the case of Linville v. Greer, 165 Mo. 380. It is true that in that case a part of this same dower land of Martha Jones was in dispute and that the same deed was in dispute, as in this case. However, the Linville-Greer case was tried upon the sole theory that there was a bar to the action by the Statute of Limitations. We have gotten the old record in that case and find this statement from defendant's counsel in that record:

"By Mr. Smith, attorney for defendants: All the

evidence I have to offer is: That the legal title as well as the equitable title emanated from the United States government more than ten years before the filing of this petition, and the evidence as shown by the agreed statement of facts."

There was no evidence of the age of Mrs. Priddy and Mrs. Linville at the time of the execution of the deed, except such as was introduced by the plaintiff. In fact, the whole case was tried upon the theory of the Statute of Limitations being a bar to the action. Here the case is different. Here we have volumes of evidence upon the question of age, and the census reports from 1840 up to 1890, showing rather conclusively a different state of facts as to the ages of these two women at the execution of the deed. The facts are so different that as to that proposition, the matter of age, we are in no way bound by the Linville-Greer case.

V. The admissibility of evidence:

1. It is further contended that the casts and photographs of the Priddy monument were inadmissible. What was said under point two of this opinion is equally applicable here. We do not find in the abstract any objection to the introduction of these exhibits, nor any exceptions to the action of the court in admitting them. On the other hand, as to the casts of the monument, we do find this in the abstract, at page 192:

"The defendants here offer exhibit 'H' marked by the stenographer 'Exhibit 53.' It was agreed that this exhibit might be taken to the Supreme Court and used by either party at the hearing."

And as to the photographs, we find, page 176 of abstract, this language:

"Next: Defendant's attorneys offered the negatives accompanying said deposition, marked from 37 to 42 inclusive, also photographs marked from 43 to 48 inclusive. It is agreed that either party might use these exhibits in the Supreme Court."

So that in the record there nowhere appears an exception to the introduction of these things but on the other hand an agreement that they might be used in this court, and they were used in this court.

2.  It is further urged in brief of counsel for plaintiffs that, ''The court erred in admitting statements and declarations made by persons not members of the family in question tending to show what the reputation in the community was concerning the age or seniority of the Jones children. Such reputation is only admissible (a) when testified to by members of the family, and (b) it must be confined to family reputation or tradition.''

This evidence is not pointed out to us by any objection of counsel to the introduction thereof, nor by exception to the action of the court in admitting it, if it was admitted. The court must go to the abstract of record for the facts and not to briefs of counsel. If there was such error it is not for review here. What we have said here applies to all objections as to the introduction of evidence, except the census lists previously discussed.

VI.  The latter part of the third paragraph of the judgment is assailed. This paragraph is as follows:

''3.  It is therefore ordered, adjudged and decreed upon the defendant's cross-petition that defendant is the owner of the following tract of land in Jackson county, Missouri, beginning at the northwest corner of Independence boulevard and Wabash avenue, thence north 172.75 feet; thence west 143 feet; thence south 172.75 feet; thence east 143 feet to the place of beginning, located in Kansas City, Missouri; and being a part of the land assigned to Martha Jones as her dower as aforesaid.

''And it is further ordered, adjudged and decreed that the power of attorney executed by James J. Priddy to S. P. Forsee authorizing him to sue for the

recovery of the possession of said land and to sell the same, be and the same is hereby set aside and held to be of no effect; and it is ordered, adjudged and decreed that the cloud upon the said title to said land of defendant caused by said power of attorney is removed and it is further ordered, adjudged and decreed that the plaintiffs and each of them have no right, title or interest in and to said real estate so belonging as aforesaid to defendant."

Plaintiffs claim that inasmuch as said power of attorney embraced other lands it should not have been cancelled. In this we think they are in error and have misconstrued this judgment. This judgment simply means that said instrument is cancelled and its cloud removed in so far as it affects the land in controversy. Reading the entire clause of the judgment this is the reasonable construction to be given thereto, and said power of attorney remains valid as between the parties and as to other lands affected thereby.

VII. The trial court found that Mrs. Priddy was of age when she made the deed to Coffman. It further appears from this finding that Elizabeth Jones was more than twenty-two years old when she married in 1855. So that as to Elizabeth Jones, even if she was slightly under twenty-one years, when she made the deed, she reached her majority before her marriage and should have disaffirmed the deed. At least the statute would begin to run as to her from the date she became of age and her subsequent marriage would not protect her. One disability cannot be tacked to another to defeat the statute. [Cunningham v. Snow, 82 Mo. 587; Burdett v. May, 100 Mo. l. c. 19, and authorities cited.]

So that the deed from these parties conveyed their interest to Coffman through whom defendant claims title. This obviates the necessity of discussing the numerous questions raised as to the thirty-year Statute of Limitations.

Owing to the magnitude of the interests involved in this action, and as intimated in the record, of others dependent thereon, we have gone through this record thoroughly. There are some things, the mutilation of the tombstone, and the absence of the family record once in the family Bible, that are, to say the least, suspicious.

Upon the whole, we conclude that the finding of facts by the court below is well supported by the evidence and the judgment entered thereon a proper one, and said judgment is affirmed.

All concur.