FLORENCE GALLI, Appellant, v. ROLLA WELLS, Receiver of the UNITED RAILWAYS COMPANY OF ST. LOUIS, a Corporation, Respondent.

St. Louis Court of Appeals. Opinion Filed April 4, 1922.

1. **EVIDENCE: Records of Public Officials: Competent to Establish Facts Required by Law to be Recorded therein.** Official registers or books of a public official, and which are required by law to be kept, are competent evidence to establish such facts as the law requires to be recorded therein, and it is not necessary that the law under which they are kept should provide that they shall be received as evidence.

2. ———: ———: **Hospital Records: Privilege Waived: Admissibility.** Under Revised Statutes 1919, sections 5799, 5812, relating to records required to be kept by hospitals, Charter of the city of St. Louis, article 13, section 14, and an ordinance on the same subject, a record containing the diagnosis of a patient's disease and the history of the treatment, etc., was admissible in evidence; the patient's privilege having been waived.

3. **APPELLATE PRACTICE: Evidence: Hospital Records: Exclusion Not Harmless.** In an action for personal injuries, the record of the City Hospital of the city of St. Louis containing information in reference to the physical condition and treatment of plaintiff while in such hospital several years before the alleged injury, *held* to show additional facts to those admitted by plaintiff in respect to such treatment which were material to the issues and which were proper evidence in the case, and hence its exclusion was not harmless.

4. **TRIAL PRACTICE:** Evidence: Hospital Records: Excluded: Whether Harmful Within Discretion of Trial Court. In sustaining a motion for a new trial, the trial court was necessarily of the opinion, after having heard the evidence in the case, that the exclusion of hospital records was harmful to the defendant, and while it was a question of law as to whether such records were admissible, the effect of their exclusion upon the defendant's case was in the first instance a matter for the decision of the lower court, and within its discretion, and in holding that the record was erroneously excluded, and in granting the new trial, necessarily concluded that such error was harmful error.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Charles B. Davis,* Judge.

AFFIRMED.

*W. H. Douglass* for appellant.

(1)   The City Hospital Record offered in evidence by the defendant (made three years prior to the accident in question) was incompetent before the passage of the statute relied on by the defendant (R. S. 1919, Section 5812), and is incompetent since the statute was passed and under the statute.   Connor v. Ins. Co., 78 Mo. App. 131; Ohmeyer v. Woodmen Circle, 91 Mo. App. 201; Reynolds v. Ins. Co.; 88 Mo. App. 679; Finer v. Nichols, 122 Mo. App. 497; Levels v. Railroad, 196 Mo. 606; Moore v. Gans & Sons Mfg. Co., 113 Mo. 98; Ennis v. Van Roden, 185 N. Y. App. Div. 782; Dougherty v. Kalbach, 175 N. Y. Supp. 837; In re Barney's Will, 174 N. Y. Supp. 242; Raymond v. Flint, 225 Mass. 521; Baird v. Reilly, 92 Fed. 884; Jordan v. Apler, 105 Atl. 620; Estate of Everts, 163 Cal. 449; In re Flint, 100 Cal. 391; Life & Accident Ins. Co. v. Cox, 174 Ky. 683, l. c. 688; Griebel v. Railroad Co., 95 N. Y. App. Div. 214; Buffalo etc. Trust Co. v. Mut. Aid Ass'n, 126 N. Y. 450; Harkness v. Swissvale, 238 Pa. St. 546; Osborn v. Railway Co., 87 Vt. 111; R. S. 1919, sec. 5812.   (a)   The hospital record was mere hearsay evidence.   See authorities, supra.   (b)   The

hospital record was incompetent under the evidence in this case, for the testimony shows that the whole record offered was written by Dr. Dahms, and it purports to be a record of what Dr. Kerwin and others did, and is not a record of what Doctor Dahms himself did. (c) If the hospital records were admissible for any purpose, their exclusion in this case was harmless error.  (2)  The deposition of Viola DeRone was admissible in evidence under the showing made at the time it was offered, and under the facts disclosed in the deposition itself. R. S. 1919, sec. 5467; Mondy v. Dressed Beef and Provision Co., 149 Mo. App. 413; Mayne v. Kansas City Ry. Co., 229 S. W. 389; McCutchen v. McCutchen, 9 Port. (Ala.), 654; Chicago, etc., Railroad Co. v. Krayenbuhl, 70 Nebr. 769; Tiele Packing Co. v. Trocke, 136 Minn. 348; Tex. & Pac. Ry. Co. v. Reagan, 118 Fed. 817; Ry. Co. v. Hubbard, 116 Ind. 194.  (3)  The verdict in this case is not excessive. Gibbs v. Almstrom, 176 N. W. 173.  Additional authorities under Point one of Points and Authorities.  Beglin Admr. v. Ins.  Co., 173 N. Y. 374; Ennis v. VanRoden, 185 N. Y. App. Div. 782.

. *T. E. Francis* and *W. H. Woodward* for respondent.

(1)  Records required to be kept by general law are admissible to prove facts required to be incorporated in the record, upon a showing that the record comes from the proper custodian, without further proof of the verity of the recitals therein.  Greenleaf on Evidence (16 Ed.) secs. 483, 484; 3 Wigmore, Evidence (1904), sec. 1643, p. 2002; Reynolds v. Prudential, 88 Mo. App. 679; Finer v. Nichols, 122 Mo. App. 497; Priddy v. Boice, 201 Mo. 309; Levels v. Railroad, 196 Mo. 606; King v. Insurance Co., 133 Mo. App. 612; St. L. Gaslight Co. v. St. Louis, 86 Mo. 606; Moore v. H. Gaus & Sons, 113 Mo. 98; Collins v. Life Ins. Co., 112 Mo. App. 220; **Ohmeyer v. Woodmen, 91 Mo. App.** 189; State v. Pagets, 92 Mo. 310; Rebas v. Rubber Co.,

37 R. I. 189; Townsend v. Pepperell, 99 Mass. 40; Kennedy v. Doyle, 10 Allen (Mass.) 161. The record kept by the superintendent of the City Hospital was one required to be kept by law. Sec. 5812, R. S. 1919; Charter City of St. Louis, Art. 13 sec.14; Sec. 1820, Wagner's Code City of St. Louis, 1914, p. 1281. (2) A mere showing that a person intended to leave the jurisdiction does not authorize the reading of his deposition. Sec. 5467, R. S. 1919; Gaul v. Wenger, 19 Mo. 542; Wetherell v. Patterson, 31 Mo. 458; Livermore v. Eddy, 33 Mo. 547; Mondy v. St. L. Dressed Beef, etc. Co., 149 Mo. App. 413. (3) Where a particular witness is equally available to both parties, no presumption arises by reason of failure to call such witness and reasons, if any, for failing so to do, are not a proper subject of inquiry. Ray v. Camp, 110 Ga. 818, 36 S. E. 242; Crane v. K. C. Southern Railway Co., 199 Mo. App. 448. The verdict, influenced by improper instructions of the court, is excessive. Wellman v. Met. St. Railway Co., 219 Mo. 126; Kirby v. St. L. & San Francisco Ry. Co., 146 Mo. App. 304; Stokes v. Met. St. Railway Co., 173 Mo. App. 676; Maggioli v. Transit Co., 108 Mo. App. 416.

BIGGS, C.—Plaintiff obtained a judgment against the defendant for $7500 in a personal injury case, it being charged that one of the defendant's cars suddenly started while she was in the act of alighting therefrom at a regular stopping place, causing her to be thereby injured. The lower court sustained defendant's motion for new trial upon the ground that it erred in refusing to admit and receive in evidence the record of the City Hospital of the City of St. Louis containing information in reference to the physical condition and treatment of plaintiff while in such hospital. From the order sustaining the motion for new trial plaintiff has appealed.

It is conceded that the evidence is sufficient to uphold the judgment on the question of defendant's neg-

ligence. The sharply contested issue in the case was on the amount of damages and whether plaintiff's injuries were caused by the accident.

Plaintiff's evidence tended to prove that in addition to a sprained ankle, she suffered from a retroversion or tipping backward of the womb or uterus which resulted in extreme nervousness. Her physician testified that the symptoms of nervousness, condition of the ankle and tenderness in the back were of recent origin, but that the time at which the misplacement of the uterus took place couldn't be considered except from the history of the case. He testified that the conditions referred to including the retroversion could have been caused by the fall from defendant's street car, and that her condition would not improve without a surgical operation.

A physician appointed by the court to examine plaintiff testified that he found plaintiff's tonsils inflamed, her ear-drum perforated and that the septum of her nose was pushed to the right side, which condition could cause the headaches and nervousness complained of. Except for the inflammation of the tonsils, the witness testified that the conditions referred to had existed for years. He also testified as to the retroversion of the womb, and that in his opinion this condition was caused by some infection.

On cross-examination plaintiff testified that in August or September, 1917, which was almost three years before the accident, she was operated on at the St. Louis City Hospital for female trouble, and that she was told that in this operation her appendix was removed and her uterus sewed up, and she stated that for seven or eight months following the operation she wore a bandage around her abdomen as a support.

After a proper identification defendant offered in evidence the City Hospital record of plaintiff's case, which is as follows:

"EXAMINATION AT CITY HOSPITAL ON FLORENCE MARLEN
(GALLI) BY DR. KERWIN
ON AUGUST 25, 1917.

'Abdomen negative. Vulva and vagina normal. Cervix point in exis of vagina. Body of uterus is pointed for back in cul de sac and fixed. Any attempt to bring it forward—painful. Ademxs—normal.

Diagnosis: Fixed retroversion. Treatment operation.'

August 31, 1917.

Operation performed by Dr. Kerwin. Record as follows:

'Abdomen opened through subumbilical incision. Uterus freely movable, far back in the cul de sac, tubes and ovaries far back also. Uterus brought forward, round ligaments shortened by bringing through broad ligaments and out over the fascia.

Appendix removed.

Abdomen closed by layer sutures. After recti muscles had been brought together by suture, it was discovered that forceps on the right round ligament had been removed. Fascia is closed, and left round ligament sutured to the outer surface, and the skin closed with catgut.

Diagnosis: Movable retroversion.

Operation: Webster-Baldy, Ventrical fixation.

| PATIENT'S RECORD | DIVISION 7877 |
| --- | --- |
| NAME—MARLEN. | WARD 20 |

9-4-17   Received patient as past operation
case wound dressed—Guienenema.          G. D.

9-7-17   Complains considerably of pain in
abdomen. Eyes trouble her some.          G. D.

9-9-17   Patient feeling good.

9-12-17  Up in the afternoon; troubled with
head aches at times; some pain in
lower left abd.

9-17-17  Patient up and walking—passed 3
days examined by Dr. Kerwin.
Uterus in good position. Patient

209 M. A.—30

complains of pain after urination; says that it feels as if her womb is going to fall out.

9-24-17   Patient has been examined by Dr. Kerwin & Gynocological card pronounced O. K. Wound in good condition. Patient still complains of pains in lower extremities. Wishes to go home. Discharged 9-24-17-10:30.

GUSTAVE DAHM.
B. H. WILLIAMS.''

It appeared that this record was made by Dr. Dahm, a junior intern at the hospital, and was made and kept in the usual and regular way that all records of patients were made and preserved.

Plaintiff's counsel objected to the record on the ground that it was incompetent and not the best evidence; that it is a record of Dr. Dahm's treatment, and that plaintiff is entitled to the right of cross-examination and is also entitled to have the doctor who made the record present to testify, which is the best evidence. It appeared that Dr. Dahm at the time of the trial was a practicing physician in the City of St. Louis. The clerk of the hospital who had charge of the record and produced it in court testified that Dr. Dahm had charge of the patient at the time the records were made. It appears, however, from the face of the record itself that it purports to be a record of an examination of the patient made by Dr. Kerwin and a record of his diagnosis and treatment of the patient. Dr. Dahm was an intern at the hospital, and under the custom and rules made the record under the supervision of his superior officers.

The court sustained plaintiff's objections to the record, but on considering a motion for a new trial following the verdict for plaintiff concluded that it had erred in excluding such evidence and on that ground granted defendant a new trial. Whether such record is proper evidence is the question for decision.

It will be noted that the foregoing statement offered in evidence is a record preserved by the hospital of the plaintiff's condition and treatment made by her physicians while she was a patient at the hospital. Ordinarily such record would be inadmissible because it is a privileged communication between physician and patient. Under the provisions of our disqualification statute (section 5418, R. S. 1919), a physician is incompetent to testify concerning any information which he may have acquired from any patient while attending him in a professional character, and which was necessary to enable him to prescribe for such patient.

In the case of Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709, it is held that a hospital physician is not competent to testify as to what he learned of the patient's condition while so attending him, and it is further ruled that the official hospital record into which the physician had copied the diagnosis of the case is privileged and not admissible in evidence. In that case it was further ruled that the fact that the City Ordinance of Kansas City required such records to be kept furnished no reason why the statute against disclosure of privileged communications should be violated.

In the present case, however, we have an entirely different question, as it is conceded that the plaintiff, by taking the stand and testifying to her physical condition and also by calling her own physician to testify on that subject, has waived the privilege given to her by the statute.

The question of privilege being eliminated on account of the waiver, it remains to be determined whether the record offered in evidence comes within the well-recognized exception to the Hearsay rule frequently designated by the terms "Public Documents," or "Official Statements." If the foregoing record may be said to be an official public document, it is admissible under the exception to the Hearsay rule, notwithstanding the party who made the record was not produced in court, and although it was not shown it was impossible

to obtain such testimony by reason of death, absence, insanity, or other like circumstance. This for the reason as stated by Mr. Wigmore in his work on Evidence, Vol. 3, Sec. 1631: "The public officers are few in whose daily work something is not done which must later be proved in court; and the trials are rare in which testimony is not needed from official sources. Were there no exceptions for Official Statements, hosts of officials would be found devoting the greater part of their time to attending as witnesses in court or delivering their depositions before an officer. The work of administration of government and the needs of the public having business with officials would alike suffer in consequence. Although, then, there is strictly no necessity for employing hearsay, in the sense that the personal attendance of the officer is corporally impossible to obtain, there is nevertheless a high degree of expediency that the public business be not deranged by insisting on the strict enforcement of the Hearsay rule."

The same author (sec. 1632), states the reason for the exception to the rule as follows:

"The first reason is related in its thought to the presumption that public officers do their duty. When it is a part of the duty of a public officer to make a statement as to a fact coming within his official cognizance, the great probability is that he does his duty and makes a correct statement. . . . The fundamental circumstance is that an official duty exists to make an accurate statement, and that this special and weighty duty will usually suffice as a motive to incite the officer to its fulfillment. . . . It is the influence of the official duty, broadly considered, which is taken as the sufficient guarantee of trustworthiness, justifying the acceptance of the hearsay statement."

Mr. Greenleaf states the rule thus (sec. 483, 16th Ed.):

"The next class of public writings to be considered consists of official registers, or books kept by persons in

public office, in which they are required, whether by
statute or by the nature of their office, to write down
particular transactions occurring in the course of their
public duties and under their personal observation.
These documents as well as all others of a public nature
are generally admissible in evidence notwithstanding
their authenticity is not confirmed by those usual and
ordinary tests of truth, the obligation of an oath, and the
power of cross-examining the persons on whose authority
the truth of the document depends.''

A number of Missouri decisions have considered the
general exception to the Hearsay rule.

This court in the case of Connor v. Ins. Co., 78 Mo.
App. 131, held that the St. Louis City Hospital is a city
institution, and that while the city ordinances require
the managers to keep a registry of all cases for local and
specific purposes, such records are not public records in
the sense that makes them competent evidence for all
purposes. The decision in this case was based on the
theory that the ordinance in effect at the time requiring
the record to be kept was a mere police regulation, and
that the record was not required by any general law.

In the case of Obmeyer v. Supreme Forest Woodmen
Circle, 91 Mo. App. 189, it was held a death certificate
was competent to show the cause of death, it being re-
quired by the Charter of the City of St. Louis that such
certificate should be made out by the physician in
charge of the patient who dies, which certificate shall
record the cause of death, and shall be deposited in the
office of the health commissioner. In that case this court
said:

''In Connor v. Metropolitian Insurance Company,
78 Mo. App. 131, we held that the records kept by the
manager of the St. Louis City Hospital, as required by an
ordinance, were not competent evidence. A very different
question is presented by the case at bar. The paper offer-
ed was one required by public law to be recorded and
filed in the office of a public functionary, whose office is

created by public law, to-wit, the charter of the city; and the same law makes an exemplified copy of the paper presumptive evidence of its contents in all courts of justice. In Reynolds v. Prudential Life Insurance Company. 88 Mo.App. 679, the defendant offered as evidence tending to show that the insured died of consumption, the records of the health department of Kansas City, including a copy of the certificate of death. The trial court excluded this evidence. On appeal the Kansas City Court of Appeals held this error, and that the certificate of death was competent evidence under the provisions of sections 5450, 5458 and 5459, Revised Statutes 1899, which are literal copies of sections 1, 9 and 10, Article 12, of the St. Louis city charter, and are charter provisions in all cities of the first class.''

In the case of Moore v. H. Gaus & Sons Mfg. Co., 113 Mo. 98, 20 S. W. 975, it was held that weather reports kept under the regulations of the United States Signal Service were competent evidence to show the condition of the weather.

In Levels v. St. Louis & H. R. Co., 196 Mo. 606, 94 S. W. 275, a public school teacher's register of ages was held admissible to show the age of a pupil at a certain time. In this case the court, after referring to the statutes of Missouri, which made it the duty of public school teachers to keep a daily register in which the names, ages and dates of the entrance of the pupils shall be entered, says:

''A register as required by that statute was kept by the teacher of the school which Hattie attended for the term beginning September 4, 1899, and that register shows that her first day's attendance was November 6, 1899, and her age then seventeen years. Defendant offered that register in evidence and it was excluded on objection of plaintiffs. The court erred in excluding the evidence; the register was a record which the law required to be kept and the evidence showed that it was kept in strict conformity to the requirement of the law. It was not record evidence in the strict sense of conclusiveness, but

like the school enumeration lists and the United States census lists, it was competent evidence to be weighed in the balance with other evidence.''

In Finer v. Nichols, 122 Mo. App. 197, 99 S. W. 808, it was ruled that in view of the charter provisions of the city of St. Louis and the ordinance of the city which provided for the registration of births occuring in the city, that the record of a birth officially registered under those provisions is competent evidence when the date of such birth is material.

In Priddy v. Boice, 201 Mo. 309, 99 S. W. 1055, it is held that United States census reports containing the name, age and date of birth of inhabitants of the country, being public official records, required by law to be kept, and made by sworn public officials, are competent evidence to show the age and date of birth of such inhabitants.

And in order that such public writings shall be admissible it is not necessary that the law under which they are kept shall provide that they shall be received as evidence in the courts. [Reynolds v. Prudential Ins. Co., 88 Mo App. 679, l. c. 682; Priddy v. Boice, 201 Mo. 309, l. c. 335.] Such records are admissible without the aid of any statute saying they should be admitted.

Under the foregoing authorities the official registers or books of a public official, and which are required by law to be kept, are competent evidence to establish such facts as the law requires to be recorded therein.

Such being the rule it remains to be determined whether or not the hospital record offered in evidence comes within the rule. And further, whether or not such record contained facts which the law required should be recorded therein and which were material to the issues in the case.

By article XIII, section 14, of the Charter of the city of St. Louis the city is given power to provide a Department of Public Welfare, composed of Divisions of Health and Hospitals. In pursuance of the authority granted by

the charter, the city enacted an ordinance, introduced in evidence in this case, being section 1820, Wagner's Revised Code 1914, which is as follows:

"Sec. 1820. Patients' records at the City Hospital. The superintendent of the City Hospital shall maintain a modern and complete individual record of patients, concerning the history, condition on admission, all examinations made, all treatments and operations, condition from time to time and at time of discharge, and reasons for discharge."

Chapter 41 of the Revised Statutes 1919, provides for a State Board of health, giving it power to make rules and regulations to prevent the spread of dangerous diseases. By a section of the article, section 5812, Revised Statutes 1919, it is provided that all superintendents and managers of hospitals to which persons resort tor treatment of disease, shall be required to make a record of all the personal and statistical particulars relative to the inmates in their institutions, that are required in the form of a certificate provided for in the article, . . . and in case of persons admitted for medical treatment of disease, the physician in charge shall specify, for entry in the record, the nature of the disease, and where, in his opinion, it was contracted.

By section 5799 of the article it is provided that in cities where health officers or other officials are conducting effective registration of births and deaths under local ordinances, such officers shall be continued as registrars in and for such cities, and shall be subject to the rules and regulations of the state registrar, and to all of the provisions of this article. Under the charter and ordinances of the city the hospital commissioner in charge of the City Hospital came within the provisions of the article.

By section 5812 he is required and directed to keep a record of all persons admitted or committed to the hospital for medical treatment of disease, and should enter in the record the nature of the disease, and where

in his opinion it was contracted.    In  addition,  section
1820 of the ordinances require that there should be kept
a patients' record at the hospital, which should contain
a complete statement of all operations and treatments,
condition of patients from time to time, and reasons for
discharge.

It is  argued  by  plaintiff's  counsel  that  the  City
Hospital records are not open to the  inspection  of  the
public, and although kept by public officials they are not
for the benefit of the public, as the public has no interest
in them, and therefore they are not such public records
as come within the exception  to  the  rule.    Ordinarily
such records are not open to  the public  because of  the
privilege statute, but where that statute is waived, as in
the  present case, the records  of  the  City  Hospital,  a
public institution, kept under requirement of the law,
are like other public records and are open to the public.
While the test of the publicity of  the  document . is  es-
sential under  the  rule  as  established  by  the  English
courts, such is not the rule in America.   Section 162 m.,
Greenleaf on Evidence, says:

"The  guarantee  of  trustworthiness  justifying  the
exception is usually said to be the official oath of duty;
but an additional reason and requirement is in England
said to be the publicity of the document, which ensures
the probability of possible errors by the public who have
access to it and the subjective incentive on the part of
the official to state correctly that which the public's in-
spection  would detect  as false if  he  recorded  falsely.
The latter reason, as accepted  in  England, limits  the
common law  scope of the  principle  in  its  application,
but it has rarely been  advanced  in  this  country,  and
seems indeed to be a modern innovation in England."

Mr. Wigmore in his work on  Evidence,  sec.  1634,
says:

"It has already been noted that the opportunity of
inspection by the public at large  has  by  some  judges
been advanced as one of the essential  reasons on  which
the Exception is based.  If it is an essential reason, and

not merely an incidental and usual advantage, then it follows that documents not so open to general inspection are inadmissible, even though made under an official duty. Such seems now to be the law in England (Sturla v. Freccia, L. R. 5 App. Cas. 623; 21 Eng. Rul. Cas. 671). But this may perhaps be regarded as in fact a modern innovation in that country. Before the opinion of Lord BLACKBURN in Sturla v. Freccia, it does not seem to have been laid down distinctly as essential. In the United States no definite acceptance of this limitation seems to have been made; although in a few opinions the element of publicity has been referred to *obiter* as essential. For the reasons already indicated (ante, par. 1632), the limitation does not seem to be a desirable one. Should it be accepted, however, the class of official documents excluded by it will, after all, be a narrow one, namely, those only which are strictly confidential. . . . It can hardly be supposed that the scope of this limitation as expounded by Lord BLACKBURN was intended to include other than confidential documents, i. e. to include that vast class of official records which are customarily not compiled for reference by the general public nor placed where the public has constant opportunity to inspect.''

In view of the foregoing charter provisions, ordinances and state statutes, we think the record offered in evidence was a public official record required by the law to be kept, and was competent evidence of such facts as the law required should be recorded therein, in a case where as here the privilege of the statute has been waived. The record offered in evidence contains a diagnosis of the plaintiff's disease at the time of entry into the hospital, namely, ''Fixed retroversion,'' which after an operation was specified as ''Movable retroversion.'' This part of the record was specifically required to be kept by virtue of the provisions of section 5812. The record offered further shows the operation, the result thereof, condition of the patient from time to time and at the time of discharge, as required by section 1820 of the ordinances. The retroversion complained of by

plaintiff and said to be entirely due to the accident is shown by this record to have existed before the accident, and while the record indicates the operation was successful and that a week before her discharge from the hospital the uterus was in good position, it appears at that time the patient was still complaining and felt as if her womb was going to fall out. It appears from said record that at the time of her discharge she still complained of pain in her lower extremities, and she admitted she was required to wear an abdominal support for some eight months following the operation. It contains other information relative to plaintiff's physical condition at the time. We think the record was proper evidence and that it contained evidence required to be recorded therein by the general law and which was material to the issues in the case.

Plaintiff's counsel argue that on account of the fact that plaintiff admitted on cross-examination that she had been operated on at the hospital and had her uterus sewed up, that the exclusion of the record was harmless. We do not agree that the record contains evidence only of such facts as was admitted by the plaintiff, but additional facts are contained therein which were material to the issues, and which were proper evidence in the case. Furthermore, the court in sustaining the motion for new trial was necessarily of the opinion after having heard the evidence in the case, that the exclusion of the hospital record was harmful to the defendant. While it was a question of law as to whether such records were admissible, the effect of their exclusion upon the defendant's case was in the first instance a matter for the decision of the lower court and within its discretion. The court in holding that the record was erroneously excluded and in granting the new trial necessarily concluded that such error was harmful error. This is the first new trial that has been granted in the case, and we as an appellate court are not disposed to substitute our discretion for that of the trial court. We accordingly rule that the error in ex-

cluding the record was prejudicial and harmful to defendant's case, and that the action of the court in sustaining the motion for new trial was correct. It is therefore recommended that its action in that regard be affirmed and the cause remanded.

PER CURIAM:—The foregoing opinion of Biggs, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed and the cause remanded. *Allen, P. J., Becker* and *Daues, JJ.,* concur.