KRAUS

v.

KANSAS CITY PUBLIC SERVICE CO.

No. 43824.

Supreme Court of Missouri,
Division No. 2.

July 12, 1954.

Charles L. Carr, R. Carter Tucker, John Murphy, William H. Wilson, J. Gordon Siddens, Rex E. Brown, Tucker, Murphy, Wilson & Siddens, Kansas City, for appellant.

Gregory E. Hodges and Jim T. Reid, Kansas City, for respondent.

WESTHUES, Commissioner.

This is a suit for damages filed by plaintiff against the Kansas City Public Service Company. A trial by jury resulted in a verdict for plaintiff for $9,500. The defendant appealed. Plaintiff's injuries for which she seeks damages were sustained when on February 13, 1949, she fell from a bus operated by the defendant. Plaintiff's fall occurred as she was ascending the steps of the bus and the principal issue at the trial was whether plaintiff's fall was due to negligence on part of the operator of the bus or whether plaintiff's fall was due to illness. Defendant urges that the evidence was insufficient to sustain a finding that the fall was due to defendant's negligence.

The evidence disclosed the following: At the time she was injured, plaintiff was 70 years of age; she was employed as a practical nurse. At about 9:30 p.m., on the above-given date, she attempted to board one of defendant's westbound busses on Lexington Street where it intersects Pleasant Street. The weather was cold and the streets were covered with ice and snow. The bus stopped and plaintiff, when she attempted to board the bus, started slipping; the steps were moist or wet; when she reached the third step, she slumped forward and the bus driver reached to help her but before he could do so plaintiff fell backward off the bus. Plaintiff suffered a laceration of the scalp and was rendered unconscious. She was taken to a hospital where it was discovered that paralysis had developed in her left arm and leg and her right eyelid drooped. There was evidence from which a jury could have found that the defendant's operator of the bus was not negligent and that plaintiff's fall was due to fainting or a cerebral hemorrhage. We are primarily concerned with the question of whether the jury was justified in finding that plaintiff's fall was due to negligence on part of the operator of the bus.

The case was submitted to the jury on a charge of negligence that the operator of the bus at the time he attempted to aid plaintiff left his position at the controls and failed to set the brake so that the bus rolled forward and that the movement of the bus caused the plaintiff to fall. Plaintiff testified that as she reached the top step the following occurred:

"Q. When you were starting to put your right foot on the top step you then went down on your knee? A. Yes, fell on my knee, that is when I reached for the hand of the driver. He saw me falling, he reached toward me.

"Q. Which hand did you put out? A. My right hand. I had my package in my left hand.

"Q. So you reached out toward the driver with your right hand? A. Yes.

"Q. Did he reach toward you, too? A. Yes.

"Q. He tried to help you? A. He tried to aid me.

"Q. As I understand he never did get hold of you? A. No.

"Q. You went on down, did you? A. I was falling forward and something jerked me backward, the motion of the car.

"Q. Something caused you to go backward? A. The motion of the car must have thrown me backwards because the next thing I knew I was seeing stars.

"Q. What sort of motion was there of the car that you observed at that time, of the bus I mean? A. That would be awfully hard to explain. When you are falling and you think you are going to fall it is awfully hard to stop your mind long enough to get all those impressions. I think it was starting to move forward as well as I can remember.

"Q. You think the bus started to move forward? A. Forward.

"Q. Do you have any judgment about how far it moved? A. No, I wouldn't."

A number of witnesses for plaintiff testified with reference to the movement of the bus. It will not be necessary to detail the evidence of these witnesses. How-

ever, we desire to refer to the evidence of a number of defendant's witnesses. Clarence E. Thompson testified as follows:

"Q. You say from the position where you were you noticed that when she started to fall forward and appeared in trouble the bus driver started to get up out of his seat? A. Yes.

"Q. Did the bus move at that time? A. Just enough—the bus driver was in the seat—just about like he—he raised up just like that and set the brake like that, before he could get to her and she had fallen (indicating).

"Q. During the time that the bus driver got up like you illustrate out of his seat and the time he sat back down and put on this hand brake did the bus move? A. Just very little.

"Q. It did move. Which direction did it move? A. Forward.

"Q. Can you tell the Court and jury whether at that particular intersection there is a downgrade in a westerly direction? A. Yes, there is a downgrade."

According to Clarence R. Conwell, the following occurred:

"Q. At the time she started this movement, whatever it was, the bus driver, did he kind of raise out of his seat, Mr. Conwell, to help her? A. He grabbed the brake and raised up to grab her, he didn't have it all the way on, he reached back and grabbed it the second time and missed her the second time he grabbed for her.

"Q. In other words, he kind of rose and didn't have the brake clear on? A. He pulled it on but it wasn't holding, it wasn't clear on.

\* \* \* \* \* \*

"Q. Did the bus move forward? A. As he got up to grab her it started to move a little bit, he made another grab for the brake, as he did he missed her.

"Q. He made two grabs for the brake? A. He grabbed it as he got up.

"Q. Did he get the brake fully on at the second grab? A. Yes.

"Q. Did that stop the forward motion of the bus? A. Yes."

■ The medical evidence as to plaintiff's injury was that plaintiff could have had a spontaneous hemorrhage which caused her to fall from the bus. Dr. John G. Sheldon testified he had treated plaintiff both before and after her injury; that in his opinion, based on the history of plaintiff's recovery, she did not have a spontaneous hemorrhage but that such hemorrhage was the result of her fall from the bus. The court at defendant's request gave the jury specific instructions that defendant was not liable if plaintiff's fall was due to "a heart attack or small cerebral blood vessel hemorrhage or cerebral accident." We are not authorized to disturb the finding of the jury where there is evidence to support such finding. The evidence in this case was sufficient to support the verdict.

The defendant offered in evidence the hospital record with reference to plaintiff's treatment. The trial court excluded the following portion of the record made at the time plaintiff entered the hospital:

Under "Chief complaint: Date and mode of onset, probable cause, course" of the printed form, the following was typewritten: "This patient was first seen in the Emergency Room on the evening of February 13 with the history of having fainted when she attempted to get on a bus. Fell backwards, striking her head on the pavement. Family states that she has never been sick and has not seen a doctor for years."

■ The evidence in this case was that plaintiff was unconscious when she reached the hospital and had been in such state since the fall from the bus. There was no showing that plaintiff gave the information contained in the portion of the record rejected by the court. The record indicates she did not give such information. The trial court was justified in excluding that portion of the record. The statute, Section 490.680, RSMo 1949, V.A.M.S., authorizes the admission of such records if made in the regular course of business "and if, in the opinion of the court, *the sources of information,* method and time of preparation were such as to justify its admission." (Emphasis ours.) The trial court was justified in holding that the sources of information of the portion excluded were not such as to justify its admission in evidence. Melton v. St. Louis Public Service Co., Mo.Sup., 251 S.W.2d 663, loc. cit. 671 (18, 19).

■ The defendant, in its brief, says the trial court erred in giving plaintiff's offered instruction on the measure of damages. The complaint is that the instruction "is argumentative and is an undue comment on the evidence by reason of the use of the emotional word 'endured'." The word "endured" was used in place of the word "suffered" which is ordinarily employed in such instructions. "Endured" is classified as a synonym of "suffered" and vice versa. Webster's New International Dictionary, 2nd Ed. We are unable to follow defendant's argument that the instruction was prejudicial. The point is ruled against the defendant.

■■ Defendant complains of instruction No. 1 by which defendant's liability was submitted to the jury. Defendant, in the brief, made seven separate complaints with reference to this instruction. We shall dispose of them collectively because some assignments overlap others and a disposition of each separately is not necessary. It is urged that the instruction enlarged the issues in the case. The issue of liability was narrowed to the sole question of whether the operator of the bus permitted the bus to roll forward at the time plaintiff was trying to ascend the steps of the bus. Defendant met that issue by introducing evidence that the bus moved only a few inches and that there was no jerk or

sudden stop of the bus. Defendant's witnesses so testified. However, one of the defendant's witnesses stated the operator grabbed for the brake and stopped the bus. It was a jury question of whether the movement of the bus caused the plaintiff's fall. That question was submitted to the jury and defendant is in no position to complain. Section 509.500, RSMo 1949, V.A.M.S.

■ The instruction required a finding to authorize a verdict for plaintiff "that plaintiff was as the direct result of said negligence (if any) thrown against parts of said bus and to the ground, and was thereby injured, * * *." The instruction did not as defendant says give the jury a roving commission to find for the plaintiff. Defendant says the instruction erroneously assumed facts and assumed negligence of the defendant and that it contains numerous facts not connected with or a part of the negligence charged. These assignments are rather general. However, an examination of the instruction does not disclose that the instruction is subject to the attacks made against it. The instruction submitted to the jury the factual situation as shown by the evidence. Then it submitted the question of negligence specifically and the causal connection between the negligence, if found and plaintiff's injuries. The instruction was not erroneous. Benham v. McCoy, Mo. Sup., 213 S.W.2d 914, loc. cit. 918(3–5). It is also urged that the instruction was not supported by evidence. We disposed of this point in the forepart of the opinion.

■ Complaint is made because the instruction did not define "highest degree of care" or how such care was to be measured. Defendant did not offer an instruction as to this matter. The instruction under consideration contained the following language: "and if you further believe that prudent men engaged in the street motor bus business, in the exercise of the highest degree of care, would not have abandoned the controls of said motor bus without first taking the necessary precautions to prevent same from rolling while it was unattended—then defendant was guilty of negligence; * * *." In our opinion, the failure to define specifically the term "highest degree of care" did not prejudice the defendant. Fantin v. L. W. Hays, Inc., Mo.Sup., 242 S.W.2d 509, loc. cit. 513 (8–12); Robinson v. Ross, Mo.App., 47 S.W.2d 122, loc. cit. 126 (10).

■ Defendant says the trial court should have declared a mistrial because of improper argument made by plaintiff's attorney. Plaintiff's lawyer told the jury in substance that they did bring every witness they were able to bring in. The trial court on motion of the defendant advised the jury to disregard that statement. The attorney for plaintiff then argued that his client was rendered unconscious by the fall and was taken to the hospital; that the defendant's agent took the names of the witnesses. The argument was in answer to the argument made by defendant's lawyer who told the jury that the defendant brought "in every possible witness we know anything about to testify, * * *"; that one was brought from Rolla and two from Sioux Falls, South Dakota; then the attorney added that "plaintiff didn't bring in a single witness to testify to the accident with the exception of the plaintiff herself and with testimony of the boy in Korea." Plaintiff's lawyer did not comment on the absence of any witness as was the case in Johnson v. St. Louis Public Service Company, Mo.Sup., 241 S.W.2d 70, loc. cit. 74(3). Plaintiff's argument was not improper and was in answer to the statement made by defendant's lawyer.

■ The final point made is that the verdict of the jury is grossly excessive. Plaintiff was 70 years old when injured. She was a practical nurse earning about $75 per month. She was in a hospital for more than two months. Her left arm and leg were paralyzed but by the time of the trial, four years after her injury, she had regained pratically full use of them. Plaintiff's right eye was caused to be out of focus and she has double vision. For this reason she testified she has been unable to con-

tinue working at her occupation. This condition is permanent. Her medical and hospital expenses were about $1,000. Loss of earnings at the time of trial four years after her injury was about $3,600. We are of the opinion that it is self evident the verdict of $9,500 is not excessive.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.

LEEDY, Acting P. J., and ANDERSON and BROADDUS, Special Judges, concur.