MARVELLE ALLEN, Appellant, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Respondent, No. 44195—285 S. W. (2d) 663.

Division Two, January 9, 1956.

*Morris & Morley* and *John J. Morris* for appellant.

*Lloyd E. Boas* and *Harry Bell* for respondent.

[664]   EAGER, P. J.—This is an action for damages for personal injuries. Plaintiff, a passenger on [665] one of defendant's buses in St. Louis, Missouri, claimed that she was caused to fall by a sudden and violent jerk of the bus as it approached her stop. This occurred on January 7, 1952. The case was submitted to the jury upon the res ipsa loquitur theory, there was a verdict and judgment for the defendant and plaintiff has appealed. Plaintiff claimed injuries to her left shoulder, neck and back. She had been examined and treated by various physicians and in two or three hospitals, and testimony from three of her physicians was produced at the trial. Because of the nature of the present assignments of error, it will not be necessary to review the controverted facts on the question of liability or the details of the claimed injuries. Plaintiff relies here on two allegations of error, both of which concern the admission of allegedly incompetent and prejudicial evidence. Further incidental references to the evidence will be made hereinafter.

The first and principal complaint is that the court erred in permitting defendant's counsel to introduce and read to the jury the back of Exhibit 6E, being a part of the records of the St. Louis County Hospital, where plaintiff was a patient in January, 1953, and an "out-patient" at the clinic in February and March, 1953. The exhibit in question was dated March 12, 1953, and was signed by a Doctor Ruby. Because of the nature of this assignment we quote the exhibit verbatim, except for signature and date: "This patient is malingering. She says she has pain in her neck and legs and left shoulder following accident which occurred one year and three months ago. No fracture. No dislocation, or any other injury would make it possible for her to wear a neck brace this long. Patient says that without it she has pain yet. This patient is doing herself much harm by not using her neck. She will develop some atrophy and fibrosis. If she has all the pain in her left arm she claims to have, by

now she would have atrophy in her left arm and forearm from disuse. Since she states she can't move the left upper extremity except in a very limited range of motion, refer this patient to physiotherapy to see if they can get her to realize the importance of exercising, perhaps helping her. X-rays show no evidence of trauma, old or new, only that she has some degenerative changes consistent with her age.''

The hospital records were produced under subpoena by Miss Bernice Brown, who had been the medical record librarian at that hospital for ten years. She was examined and cross-examined at great length concerning these records, first out of the presence of the jury and by counsel for both parties. She testified: that the records were the hospital records of plaintiff; that they were kept in the witness' custody, and that they were made and kept in the regular and ordinary course of the hospital's business; that the entries therein were made at or near the times the respective persons involved saw the patient; that the doctors write the history, findings, progress notes and all the diagnoses; that the nurses make certain incidental entries, including the nurses' notes; that she knew all the doctors whose names were shown; that the records come to her, complete, upon the discharge of the patient; that she could not know personally that every entry was made immediately after the event, but that she knows the procedure; that she visits the various departments of the hospital; that if a patient is seen in the clinic as an out-patient, a record is made by the doctor at the time, and in the regular course of business, and that entry becomes a part of her records; that Dr. Ruby was a resident physician at the hospital in March, 1953, but had since left and gone west; that she was familiar with his handwriting, which she identified in the body of Exhibit 6E. Many of the clinic records read in evidence concerned examinations and treatment of plaintiff prior to the accident. Plaintiff's counsel objected to all the records generally as not properly qualified under the Uniform Business Records Act, but the trial court held that they were admissible and announced that it would consider specific objections to specific parts. The present assignment concerns only the matter quoted above.

[666] The objections with which we are now concerned are: that the matter was hearsay; that plaintiff was denied the right of cross-examination thereon; that it consisted of conclusions; that it was highly prejudicial and unfair, and that it invaded the province of the jury. These objections were made to the quoted matter as a whole.

We first consider the objections of hearsay and denial of cross-examination, which are, in effect, the same. Hospital records have long been held admissible generally in Missouri (in the absence of privilege) as official records kept pursuant to statute. Borrson v. M.K.T. R.R., 351 Mo. 214, 172 S.W. 2d 826, 833; Kirkpatrick v. Wells, 319 Mo. 1040, 6 S.W. 2d 591, 593; Galli v. Wells, 209 Mo. App. 460,

239 S.W. 894; Sullivan v. K.C. Pub. Serv. Co., Mo. App., 231 S.W. 822, 826. Thus even prior to the enactment of the Uniform Business Records Act (§§ 490.660-490.690, RSMo 1949, V.A.M.S., L. 1949, p. 275), the objections of hearsay and deprivation of cross-examination were held to be generally ineffective. Since that enactment it has been held distinctly in Missouri that hospital records come within the purview of the Act and that, when properly qualified thereunder, they are admissible generally. Melton v. St. Louis Pub. Serv. Co., 363 Mo. 474, 251 S.W. 2d 663; Gray v. St. Louis-S.F. Ry. Co., 363 Mo. 864, 254 S. W. 2d 577. And see York v. Daniels, Mo. App., 259 S.W. 2d 109, involving the records of an autopsy, which, of course, is in point as a clear analogy. A brief and instructive review of the Missouri cases appears in the October, 1955 issue of the St. Louis Bar Journal at page 39. Objections to such records as hearsay and as depriving a party of the right of cross-examination are, therefore, not effective if the records have been properly qualified under the Uniform Business Records Act (hereinafter referred to as "the Act.")[1] For a full citation of cases on the subject from other jurisdictions see those cited in the 1955 Pocket Supplement of Wigmore on Evidence, 3rd Ed., Vol. 6, § 1707. The Missouri view appears to be definitely in line with the great weight of authority. There must, of course, be a preliminary showing of the identity of the record, the mode and time (or times) of its preparation, and that it was made in the regular course of business; if this, and the "sources of information," are sufficient "in the opinion of the court," then the record, generally, is admissible. The requirements of this preliminary showing have been discussed by the Missouri Courts, and some hospital records have been rejected, in whole or in part, as insufficiently qualified. Conser v. A.T. & S.F. Ry. Co., Mo., 266 S.W. 2d 587; Gray v. St.L.-S.F. Ry. Co., 363 Mo. 864, 254 S.W. 2d 577; State v. McCormack, Mo., 263 S. W. 2d 344. We have outlined in some detail the testimony of the Record Librarian concerning the hospital records produced here. We have determined that this qualification was sufficient, and we so hold. To require more would, as a practical matter, seem to enforce the attendance and testimony of the various persons who co-operated in making the record, which is the very thing the Act seeks to obviate. 6 Wigmore on Evidence, 3rd Ed., § 1707; and a reasonable liberality seems to be imposed by the very wording of § 490.690. To construe the act too strictly would be to repeal it. The qualification of the records here was applied not merely to them as a whole, but to various parts thereof including specifically Exhibit 6E.

We do not hold, however, that the proper qualification of hospital records under the Act necessarily makes all parts of the record automatically admissible. If specific and legally proper objec-

[1]Of course, specific parts may actually be hearsay if the source of information is insufficient.

tions are made to parts of the record, on grounds other than hearsay generally, such parts may be properly excluded. Kraus v. K.C. Pub. Serv. Co., Mo., 269 S.W. 2d 743; Gray v. St. Louis-S.F. [667]. Ry., 363 Mo. 864, 254 S.W. 2d 577. And it has been said that the Act does not make relevant that which would not otherwise be relevant. Hancock v. Crouch, Mo. App., 267 S.W. 2d 36; and see Long v. United States (4th Cir.), 59 F. 2d 602; K.C. Stock Yards Co. v. A. Reich & Sons, Mo., 250 S.W. 2d 692 (by analogy only). In other words, all that the Act does, essentially, is to eliminate the hearsay objection.

We do not propose to point out here all the matters which are or are not admissible when made part of a properly authenticated and qualified hospital record. Of the Missouri cases the interested may read: Melton v. St. Louis Pub. Serv. Co., 363 Mo. 474, 251 S.W. 2d 663; Kraus v. K.C. Pub. Serv. Co., Mo., 269 S.W. 2d 743; Gray v. St. Louis-S.F. Ry. Co., 363 Mo. 864, 254 S.W. 2d 577; York v. Daniels, Mo. App., 259 S.W. 2d 109 (private autopsy records, but analogous). The case of New York Life v. Taylor (App. D.C.), 147 F. 2d 297, is strongly relied on by plaintiff's counsel. In that case certain psychiatric diagnoses and history were rejected, chiefly as being opinions and conjectural, and not an "automatic reflection of observations." There was a strong dissent. We are not bound by that decision nor is our evidence the same; we may say, however, that the principles adopted in the dissenting opinion conform more nearly to those heretofore applied by the Missouri courts and by the great weight of authority generally. For constructive criticism of the majority opinion see 59 Harv. L.R., p. 561, l.c. 564-565, and also Buckminister's Estate v. Commissioner of Int. Rev. (2nd Cir.), 147 F. 2d 331. For a further discussion of the matters which should be held admissible see: Weis v. Weis, 147 Ohio 416, 72 N.E. 2d 245; Watts v. Delaware Coach Co., 44 Del. Rep. 283, 58 Atl. 689; Gallagher v. Portland Traction Co., 181 Ore. 385, 182 P. 2d 354; Borucki v. MacKenzie Bros., 125 Conn. 92, 3 Atl. 2d 224; Valenti v. Mayer, 301 Mich. 551, 4 N.W. 2d 5; Reed v. United Commer. Trav. (2d Cir.), 123 F. 2d 252. As to previous history, with particular reference to the occasion for entering the hospital, compare the Melton and Kraus cases, *supra,* and also see York v. Daniels, Mo. App., 259 S.W. 2d 109. It would seem that the following parts of a duly authenticated and qualified hospital record should be admissible, unless subject to specific objections such as irrelevancy, inadequate sources of information, as being self-serving, as going beyond the bounds of legitimate expert opinion, or on similar substantive grounds: the physical examination findings, the patient's symptoms and complaints, treatment and progress records, diagnoses by those qualified to make them, the results of analyses and laboratory tests, X-rays, the behavior of the patient, and those parts of the patient's history inherently necessary (or at least helpful) to the observation, diagnosis and treatment of the patient (Melton

v. St. Louis Pub. Serv. Co., 363 Mo. 474, 251 S.W. 2d 663, re history). The matters here noted do not purport to be exclusive. Since the hearsay objection is obviated, we see no reason why a proper expert medical opinion contained in a hospital record should not be accorded dignity equal to that of a similar opinion from the witness stand; to preserve the right of cross-examination intact as to such matters would be to repeal the statute (dissenting opinion in New York Life v. Taylor, supra). Much discretion must remain in the trial court, and, of course, all records admitted must be confined to and connected with the bona fide observation, diagnosis and treatment of the patient' in question.

The entire back of Exhibit 6E was read in evidence. A blanket objection was made to the entire offer. Indeed, the allegation 'of' error here is directed at the whole exhibit, as offered. If any part or parts of the exhibit were admissible, the objections were properly overruled. Curtis v. Indemnity Co. of Amer., 327 Mo. 350, 37 S.W. 2d 616, 626; Ray County Sav. Bank v. Hutton, 224 Mo. 42, 123 S.W. 47; Logan v. Field, 192 Mo. 54, 90 S.W. 127; Schwinegruber v. St. Louis [668] Pub. Serv. Co., Mo. App., 241 S.W. 2d 782; White v. Hasburgh, Mo. App., 124 S.W. 2d 560; Weinshenk v. Sullivan, Mo. App., 100 S.W. 2d 66; and this principle was particularly applied to hospital records in Gallagher v. Portland Traction Co., 181 Ore. 385, 182 P. 2d 354. Portions of the evidence so offered were clearly admissible; among these are: the complaints of the patient; physical finding (or history) of no fracture; the medical opinion that the patient was doing herself harm by not using her neck and that she would develop atrophy and fibrosis; the recommendation of physiotherapy; the interpretation of the X-rays, and perhaps other things. It was certainly not the duty of the trial court to sift the wheat from the chaff. Physicians may properly express legitimate expert opinions and, as such, they do not invade the province of the jury. Eickmann v. St. Louis Pub. Serv. Co., 363 Mo. 651, 253 S.W. 2d 122; Wild v. Pitcairn, 347 Mo. 915, 149 S.W. 2d 800. There was direct testimony that the doctor who wrote this entry was, at the time, a resident physician of the hospital; from this we may presume his qualifications. With all other objections disposed of the assertion of prejudice, alone, cannot avail. We need not, and do not, under these circumstances, pass upon the independent admissibility of the statement that "this patient is malingering." Those who are curious as to this may read the opinions in Eickmann v. St. Louis Pub. Serv. Co., 363 Mo. 651, 253 S.W. 2d 122, and People v. Gorgol (Calif. App.), 265 P. 2d 69, and the authorities cited. The fact that some of the matters in Exhibit 6E may, if so, have been in conflict with other evidence of defendant goes merely to the weight of the evidence. There was no error in admitting the evidence in question; it having been properly

admitted, plaintiff's motions to strike and for a mistrial were properly overruled.

■ What we have already said is applicable in part to appellant's other point, which is not extensively briefed here. Plaintiff admitted having a prior fall in a Kroger store in St. Louis in June, 1950; also, that her back was then treated by a Dr. Dorsey by bandaging and heat, and that she "laid around" for three weeks. She testified that she completely recovered. At the trial defendant produced under subpoena the files of the Manufacturers and Merchants Indemnity Company which company had made a settlement with plaintiff for that injury. The original files were produced by Edward W. Warner, Claims Attorney for the company in St. Louis, who was also the Claims Manager for its Midwest Division; he had been with the company since May 29, 1950. He testified that records of claims filed were regularly kept; he identified the files and record of plaintiff's claim, stated that they were made and kept in the ordinary course of the company's business, and explained in much detail the method of handling claims and preparing the files and records in the St. Louis office, stating further that the method described definitely applied to the claim in question; he further testified that the various dates shown in plaintiff's file were, in his opinion and according to his experience, dates at or around the times of the events in question, in a chronological order, and according to normal handling. He did not know of his own knowledge when the entries were made. He did not personally work on plaintiff's claim; he further testified that when such a file is prepared, carbons of everything are kept in the St. Louis office and all originals are sent immediately to the Home Office in Cincinnati, Ohio, where they are stamped as received, with the date. In this particular matter the St. Louis files had been destroyed after one year according to the universal practice, and Mr. Warner had received the original file from the Home Office about a week before trial, with instructions to keep it in his possession at all times. Defendant's counsel was permitted to tell the jury, from reference to this file, the amount paid plaintiff in settlement of her claim and to read to the jury the following medical report of Dr. Dorsey, dated July 14, 1950: "Report of accident to Mrs. Marvelle Allen. Sustained June 10th, 1950 in Kroger store in Wellston, Missouri; stepped on something and [669] fell on her back, injuring back. Pain in lower abdomen; severe pain in back. Treatment: Bandage to back, small part. Electric heat applied every third day. Internal medication for pain. Disability for about eight weeks more. Bill to date, $35.00."

Counsel objected to the file generally on the ground that the witness was not the proper custodian, that he had no personal knowledge of the entries, and that the file or record had not been properly qualified under the Uniform Business Records Act; specifically, he objected to the medical report as being "repetitious" because plaintiff had ad-

mitted on direct examination that she had been injured in the Kroger store and "to what extent." The objections were overruled. Plaintiff's counsel later offered to show the jury the entire file, but when the court deemed this unnecessary and in some particulars improper, he read to the jury a report from the St. Louis office to the home office, including many details of the fall, the medical treatment, the expected period of disability and the settlement negotiations. This embraced various things not included in the above medical report.

We think that the records were sufficiently qualified under the Act to meet the objections now urged. Counsel have only briefed the contention that Mr. Warner was not the proper custodian, that he had no personal knowledge of the time of making the entries and that he did not know whether any part of the file had been "removed." Mr. Warner was at least the temporary custodian, and if that is insufficient, he came within the meaning of the words "or other qualified witness," as used in Section 490.680 of the Act; he related in detail the practice in the particular office in question in the preparation and keeping of such records, both as to mode and time. The speculation about a possible "removal" of some portion of the record is based on nothing but a question to Mr. Warner as to his lack of personal knowledge, and hardly justifies comment. We hold that the parts of the file which defendant offered were admissible. Moreover, we do not think that this evidence was prejudicial to plaintiff. The objection that the medical report was repetitious was properly overruled for certainly the plaintiff did not testify to all the substance of that report; see Galli v. Wells, 209 Mo. App. 460, 239 S.W. 894, 899. And defendant should have the right to put in its own version, by proper evidence, on any material issue. Under these circumstances we need not decide whether plaintiff's counsel waived his objections by reading as he did from these records.

The judgment of the trial court is affirmed. It is so ordered. All concur.