**STATE of Missouri, Respondent,**

v.

**William Wentworth FOSTER, Appellant.**

**No. 57304.**

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Robert C. Babione, Public Defender Bureau, City of St. Louis, St. Louis, for appellant.

HENRY I. EAGER, Special Commissioner.

Defendant was convicted of forcible rape and sentenced to a term of 20 years by the Court, a prior conviction having been shown. The notice of appeal was filed prior to January 1, 1972, and we have jurisdiction. Defendant does not question here the sufficiency of the evidence for submission and we do not recite the facts in any great detail.

The jury could reasonably have found the following facts: On the evening of September 14, 1970, at about 9:15, Mrs. Linda Daben was driving her Chevrolet car east on Washington Street in St. Louis with a friend, Linda Thomas, as a passenger. Miss Thomas was a young unmarried woman. They stopped for a stoplight at Kingshighway. Two young Negro men approached the window on the driver's side; one came very close and held a pistol to Mrs. Daben's head, forcing her to open the rear door on his side and Miss Thomas to open the rear door on the other side; both entered the rear of the car; one, definitely identified as this defendant, was still holding the gun. Mrs. Daben was told to drive where defendant directed, and into an area of North St. Louis with which she was not acquainted. At one point Mrs. Daben saw a police car and "speeded," hoping to be stopped, but nothing happened. She was finally directed by defendant into an alley where she was told to park; there defendant took each of the women out of the car, one at a time, and proceeded for some distance down the alley; he talked with them, asked Miss Thomas if she was "prejudiced," pushed her against a wall and kissed her. He became alarmed because of children in the alley, re-entered the car and required Mrs. Daben to drive for another 20-30 minutes, finally stopping her in another alley. There he took Miss Thomas from the car down the alley to a weedy, vacant spot where two derelict and abandoned trucks were standing. Holding the gun, he forced Miss Thomas to get up into the cab of one of the trucks; he had her remove all or most of her clothing and lie down on the seat; he removed his blue jeans, proceeded to get on top of her, and performed an act of intercourse, sufficiently described in the record to meet all requirements of rape. Miss Thomas testified that she did not consent to the act, tried to push him away, and told him she did not want "sex with him." Defendant had laid the gun down before actually performing the act of intercourse, but thereupon put on his clothes and picked up the gun; he had held the gun in his hand while Miss Thomas was disrobing. The girl was taken back to the car, disheveled and crying, and Mrs. Daben was taken down the alley for a time. When all were in the car again, defendant still holding the gun, Mrs. Daben drove to a "Jack-in-the-Box" restaurant a few blocks away. There she got out and entered the place; defendant gave the gun to the other man, and also entered. At about that time a police car came up to the drive-in window and Mrs. Daben got word relayed to the officers, through an employee, that something was wrong in the car out on the lot. The officers called in additional help, went to the car, and arrested defendant as he was walking away across the parking lot; they also searched the car, found the .38 caliber loaded revolver under the right front seat and arrested the other man, later identified as one McDaniel. The women were thus detained by defendant for a period of perhaps three hours. They told the officers what had happened; they were driven around the neighborhood until the lot with the old trucks was located. The place was searched, photographs taken, and two pillows and a paper towel preserved as evidence. At the trial certain clothing of the defendant and of Miss Thomas was offered and received in evidence. Defendant's (black) shorts and the paper towel showed the presence of male semen upon laboratory examination. Defendant was positively identified at the trial as the one who committed the acts referred to. Other phases of the evidence will be referred to later.

Defendant's points are: (1) that it was error for the Court to admit "the diagnosis of alleged rape" from a hospital record and permit the state to argue about "what the doctor said * * *"; (2) that it was error to overrule defendant's objection to the argument that Miss Thomas had lost "something very, very precious * * *"; (3) that the Court erred in giving a "coercive" instruction to the jury after it had deliberated for a time.

The record librarian of the Homer Phillips Hospital produced two papers identified as the records of Linda Thomas, made when she was taken there on the night of September 14, 1970, or early the next morning. These were marked as Exhibits 16 and 17. The witness answered certain questions concerning the making and keeping of such records. Upon offer of the exhibits by the State, defendant's counsel objected that there was no sufficient foundation and "no evidence that these are the ordinary records used in the daily business of this hospital." The witness then answered certain additional questions concerning the making and keeping of such records and the State re-offered the exhibits. Counsel for defendant stated that he had *no objection,* and the Court stated that they were "admitted into evidence without objection." On specific examination concerning Exhibit 16, it was developed (reading) that it showed: "vaginal smear * * * Spermatozoa found. No. GC found." The witness explained that "Spermatozoa" meant male sperm. From Exhibit 17, under "diagnosis," the witness read: "Alleged rape." Counsel objected to that statement as an "ultimate conclusion of fact" and moved that it be stricken and the jury admonished. A colloquy with the Court followed, during which the Court asked defendant's counsel: "You read the thing, didn't you?" Counsel replied: "Yes, your honor. I didn't know what she was referring to in that situation at that time." There was further discussion, and the Court overruled the objection because defendant had "let it into evidence without objection."

■ Counsel argues here that the Uniform Business Records Act, § 490.660–490.690, RSMo 1969, V.A.M.S., does not necessarily make all parts of a record admissible. That is true, if the parts in question are properly and timely objected to upon a ground other than hearsay. Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663 (1956); Thomas v. Wade, 361 S.W.2d 671 (Mo. banc 1962). But the Court is not required to sift through a record and determine what is admissible and what is not. Allen, supra. There, upon a blanket objection where most of the record was admissible, it was held that all was properly received. We agree with the trial court that this objection and motion came too late. The record indicates that counsel had previously seen the records, or, in any event, had opportunity to do so.

■ It may well be that this statement was admissible, even upon timely and proper objection, but we need not decide that. It has been held that a patient's history, necessary to the observation, diagnosis and treatment, is admissible, and that a proper expert medical opinion in a record should be as valid as the *doctor's* testimony. Allen, supra. This statement was actually a history, rather than a diagnosis; and that history was obviously essential to the examination and care of the patient, as—the necessity for the taking of a vaginal smear and the making of a laboratory analysis, both for the protection of the patient and by way of assistance in any future prosecution. See also Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663 (banc 1952).

Defendant says he was thus deprived of the right of confrontation and cross-examination, and prevented from showing this statement was outside of the doctor's "expertise." Counsel did not proceed so as to make a determination of the admissibility necessary. Counsel's vague suggestions of a constitutional violation do not merit discussion. This was a mere evidentiary ruling.

Defendant cites two cases: Terrell v. Missouri-Kansas-Texas R. Co., 327 S.W.2d 230 (Mo.1959), and Butcher v. Main, 426 S.W.2d 356 (Mo.1968). Terrell held, as we have already noted, that if specific and legal objections are made to parts of a hospital record, other than hearsay, such parts may properly be excluded, citing Allen, supra. The case also indicates that if a record is received in evidence as a whole without specific objection to parts, those parts may be read later, although they would have been inadmissible upon specific objection. Butcher, supra, is cited as holding that a doctor's opinion is a mere "conclusion of fact."

■ We dispose of this point by holding further that, in any event, the admission of this statement was not prejudicial. The entry was not "rape" but *"alleged rape."* No one had thus attempted to judge ultimate guilt. "Alleged rape" was precisely what defendant was being prosecuted for, and the jury knew from the very outset of the trial that such was the exact charge. The reading of this statement added nothing, and could not have further prejudiced the defendant in the minds of reasonable jurymen. The point is denied.

■ During his final argument, the Assistant Circuit Attorney, in discussing credibility, asked how Miss Thomas would be affected by the result of the trial, and stated: "She gets no money. She gets nothing. She came down here as a witness. And there is something very, very precious, something that she won't get— she can't get back that was taken from her by this defendant—" (interruption). Counsel for defendant objected to the argument as "improper comment"; this was overruled. No further relief was asked.

Defendant says now that this statement went outside the record and inferred a status of lost virginity, which unduly inflamed the jury; and there was no evidence to show she was a virgin. Such was not and is not a necessary inference. On the State's evidence the girl had been sex-ually violated in fear and against her will; any woman has a right not to be forced into sexual contact against her will and without her consent. The evidence here fairly showed such had been done. That being true, it could reasonably be inferred from the evidence that this violation of the girl's body had adversely affected her peace of mind, her normal poise and dignity, and had imposed mental and nervous distress, both upon her present and future life. We regard the statement as one fairly justified by the evidence. Prosecutors may generally state their conclusions when so justified. State v. Feltrop, 343 S.W.2d 36 (Mo.1961); State v. Woods, 406 S.W. 2d 593 (Mo.1966); State v. Burchett, 302 S.W.2d 9 (Mo.1957); State v. Paglino, 319 S.W.2d 613 (Mo.1958); State v. Moore, 428 S.W.2d 563 (Mo.1968); State v. Chester, 445 S.W.2d 393 (Mo.App.1969). The argument was not improper. We do not follow defendant's argument that this statement took away the jury's consideration of the issue of "consent." That was an issue throughout the trial and it was fully submitted in the instructions. A single statement of the prosecutor in argument could not affect that issue; and certainly no more so than his entirely legitimate arguments that the girl acted in fear and never consented. The supposed constitutional violation of "due process" by the making of the argument is wholly untenable. The cases cited by defendant, State v. Swing, 391 S.W.2d 262 (Mo.1965), and State v. Selle, 367 S.W.2d 522 (Mo.1963), are so wholly different on their facts as to be inapplicable.

Counsel failed to mention that later, in the Assistant Circuit Attorney's final argument, and while he was arguing that there was no consent, he referred to the place of the occurrence and said: "You mean to tell me this lady is going to give up her virginity in this place—." This was met by an immediate objection "There is no evidence of her virginity." That objection was promptly sustained and the jury was instructed to disregard the statement. If there should be any doubt about the prior

statement, now claimed as error, any possible error was fully corrected by this later ruling, and there could have been no prejudice. The point is denied.

■■ After the jury had been out for (so defendant's counsel says) "about three hours," it indicated that it could not "come to a decision" ; the Court sent them to dinner and upon their return gave an additional instruction, sometimes referred to as the "hammer" instruction. The jury then retired and returned with a verdict in about fifteen minutes. Defense counsel had objected in advance to the giving of the instruction on grounds which we consider appropriate.

Counsel concedes here that the giving of such an instruction and its contents have generally been approved by this Court. And see State v. McDaniel, 392 S.W.2d 310 (Mo.1965); State v. Bozarth, 361 S.W.2d 819 (Mo.1962); State v. Covington, 432 S.W.2d 267 (Mo.1968); State v. Roberts, 272 S.W.2d 190 (Mo.1954). The giving of such an instruction and the time of giving it are largely discretionary with the trial court. State v. McAllister, 468 S.W.2d 27 (Mo.1971). Except for minor and immaterial differences, the instruction given here is substantially identical to that given in McDaniel and Roberts, supra, and in form and substance it conformed to the holdings in sundry other Missouri opinions where the individual instructions are not set out. For instance, it particularly stated that no juror should ever agree to a verdict nor find as a fact that which, under the evidence and his conscience, he believed to be untrue. We conclude, as obviously counsel has, that the giving of this instruction conformed to the established practice of the Missouri Courts.

But counsel says that our practice is coercive and wrong, and cites law review articles, a few cases from other states and some from federal jurisdictions. But it appears, from his own brief, that there is not even an approach to unanimity in the shift of position. Counsel further recommends that we adopt an instruction which would follow the recommendation of the American Bar Committee on "Minimum Standards for Criminal Justice" ; and he quotes a form of instruction, No. 2.96, prepared by our Special Committee on Pattern Instructions for Criminal cases which, he says, conforms to that standard. We note, however, that in adopting the Pattern Instructions this Court did not adopt the Committee's recommended 2.96, but adopted instead No. 1.10 which is identical in substance to the instruction given here.

It would be useless to prolong this discussion further. The trial court here gave an instruction in the form approved over a period of many years by this Court. It was entirely proper for it, within its discretion, to do so. We may not, and shall not, reverse the case on that account. Indeed, the substance of the instruction has again been approved by this Court in the Pattern Instructions. The Court here did not err.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.